[No. 27712-0-I.    Division One.    July 13, 1992.]

THE STATE OF WASHINGTON, *Respondent,* v. BETTY SANDERS, *Appellant.*

*Rita Griffith* of *Washington Appellate Defender Association,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Catherine Shaffer, Deputy,* for respondent.

PER CURIAM. — Betty Sanders appeals her conviction for possession of cocaine with intent to deliver. We accelerate review and affirm.

## I
### FACTS

Based on information from a confidential informant, members of the South Precinct Anti-Crime Team began watching the Rainier Vista housing project in Seattle for street narcotics transactions in March 1990. Among the units apparently linked to this activity was Sanders' residence, 4432 Chestnut Court South #157. The police obtained a search warrant based in part on the drug sales activity they had observed during their surveillance, which included apparent sales from Sanders' apartment.

The search warrant for Sanders' residence was served on March 2, 1990, at about 8:40 p.m. The individuals found inside the residence, including Sanders, were brought into the living room area. Meanwhile, Officer Dallas Murry made an initial sweep of the residence to determine if anyone else was inside. In the course of this sweep, he entered the northwest bedroom. He saw a glass dinner plate containing numerous pieces of suspected rock cocaine sitting on a large pile of clothing on a bed in that room. Officer Murry

immediately returned to the living room, waited for *Miranda*[1] warnings to be given and acknowledged, and then asked who lived in the northwest bedroom. Sanders said she did.

The glass plate held 10.5 grams of crack cocaine. There were two large balls of cocaine which appeared to bear straightedge cut marks and a number of smaller pieces that would commonly sell on the street for about $20 apiece. There was also a straightedge razor on the plate. The glass plate was later processed for fingerprints by a latent fingerprint examiner. The examiner found two prints of a right thumb which matched Sanders' fingerprints.

Officer Murry also found a piece of paper containing three chunks of off-white material with a net weight of 0.2 grams under an end table beside the bed in Sanders' bedroom. Two of the chunks were cocaine. The officer also found numerous plastic sandwich baggies, corners of baggies and a vial containing white powder residue.[2] The officers found no other drugs or implements for making crack cocaine in the residence. Officer Murry testified at trial that the amount of drugs recovered was equivalent to a 2- or 3-week supply for a moderate cocaine user.

In Sanders' bedroom closet, Officer Murry found a "very clean" rock cocaine smoking pipe. He also found two jars containing a white crystalline substance that did not test positive for controlled substances and appeared to be a cutting agent. On Sanders' bedroom closet shelf, Officer Murry found .22 caliber ammunition, some of which was inside a box labeled as containing a hair treatment, and a .30 caliber rifle lying against the back wall of the closet behind some clothing. He uncovered two "rather sophisticated" walkie-talkies located in the same area as the plate of suspected cocaine. Neither of the walkie-talkies was packaged nor

---

[1] *Miranda v. Arizona*, 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602, 10 A.L.R.3d 974 (1966).

[2] Officer Murry testified that flake powder cocaine is sold on the street primarily in plastic baggies or in the corners of plastic baggies.

wrapped in any way, and Officer Murry did not see any store packaging for them. During a search incident to arrest, cash in the sum of $118 was recovered from Sanders' sock. Sanders was subsequently charged with possession of cocaine with intent to deliver.

At trial, Officer Murry testified that he began his career by working as a police officer for the City of Pasco for 8 years. During his last 3½ years in Pasco, he was the sergeant in charge of the major crimes unit. He was also a board member of a drug enforcement unit responsible for investigating heroin and cocaine trafficking. In 1985, he became an officer with the City of Mercer Island Police. In 1988, he joined the Seattle Police Department where, since 1989, he has been a member of the Seattle Police Department South Precinct Anti-Crime Team. Officer Murry testified that the primary focus of his unit was investigation of street-level narcotics trafficking. He explained that over 5 years of his police career had been related to narcotics investigations, that he had assisted in serving 300 to 400 narcotics search warrants and had been involved in over 1,000 narcotics investigations. Officer Murry's formal training in the area of narcotics investigations included courses at the police academy, at least four Washington State Criminal Justice classes, attendance at a Drug Enforcement Administration (DEA) training session, a 1-week DEA refresher course, training on the Anti-Crime Team, and attendance at a 4-day New Jersey State Highway Patrol drug addiction class.

Officer Murry testified about the significance of much of the evidence he seized including how crack cocaine is normally smoked, how a glass crack pipe is used, and why it is unusual to find a clean crack cocaine pipe. When Officer Murry was asked about the absence of crack smoking devices in the Sanders residence, the following colloquy occurred:

Q: Based on your training and experience, is there any significance in the absence of implements used to smoke crack cocaine[?]
A: Yes, I believe so.

Q: What is that significance?

A: I don't believe that this residence was used by — or —

[DEFENSE COUNSEL]: I object, Your Honor, I think this is a question for the jury to determine, given the nature of the charges in this case.

THE COURT: With more particularity what is the objection stated?

[DEFENSE COUNSEL]: I think it is an improper opinion by this officer as to the ultimate decision for the jury in this case.

THE COURT: [Prosecutor] —

[PROSECUTOR]: Your Honor, I don't think there is any opinion by this officer on the outcome a jury should reach. He's testifying, and the jury has no expertise in a world of drugs.

[DEFENSE COUNSEL]: Your Honor, I object. If we could perhaps have a sidebar. I don't think this is appropriate to be in front of the jury.

THE COURT: I think the witness can answer the question. We are not going to have a sidebar.

Q: What is the significance of absence of implements used to smoke crack cocaine?

THE COURT: In your opinion.

THE WITNESS: Based upon my experience, the lack of items associated with the smoking of crack cocaine indicates that that house is not used for that purpose and the persons within do not do so frequently at all.

Defense counsel objected numerous times during other portions of Officer Murry's testimony as to his opinions about the use, manufacture and sale of drugs on grounds of foundation, lack of expertise, and relevance.

In response to questioning about where drug users keep drugs in their homes, Officer Murry stated that in "[a] house where it is indicated that there is the actual smoking of rock cocaine, we usually find the items related to that all over the house. There are some rather small articles that fall out of the pipes. If it is an active narcotics smoking house we find that stuff all over the place."

The jury was instructed on both possession with intent to deliver and the lesser included crime of possession. The jury convicted Sanders of the greater crime. This appeal followed.

## II
### POLICE OFFICER'S EXPERT TESTIMONY

Sanders contends that the trial court erred in allowing Officer Murry to testify that, based on his experience, the lack of drug user paraphernalia in Sanders' residence "indicates that [her] house is not used for that purpose and the persons within do not do so frequently at all." Sanders argues that the officer's testimony did not satisfy the foundation requirements for expert opinion testimony,[3] and that his testimony amounted to an improper opinion as to her guilt on the charge of possession with intent to deliver.

■ ■ Sanders contends the officer's opinion lacked adequate foundation because it was not based on a scientific principle or theory. In conjunction with this portion of his testimony, defense counsel did not object to the officer's expert qualifications or to the foundation for his testimony. Her objection was on the ground that the officer's opinion would invade the province of the jury. Since the issue regarding the foundation for this expert testimony is raised for the first time on appeal and is not of constitutional magnitude, it need not be addressed here. *State v. Mak*, 105 Wn.2d 692, 719, 718 P.2d 407, *cert. denied*, 479 U.S. 995 (1986).

However, because this is an issue that recurs frequently in drug cases, we will exercise our discretion to review it here. *Bennett v. Hardy*, 113 Wn.2d 912, 918, 784 P.2d 1258 (1990). Initially, we observe that it is not surprising that defense counsel did not object to lack of foundation because there is no basis for such an objection here. Although expert opinion evidence is usually not admissible under ER 702 unless it is based on an explanatory theory generally accepted in the scientific community, *State v. Lord*, 117 Wn.2d 829, 850, 822 P.2d 177 (1991), where expert testimony does not concern sophisticated or technical matters,

---

[3]We note that, under the recent ruling in *State v. Ortiz*, 119 Wn.2d 294, 308-09, 831 P.2d 1060 (1992), the testimony would also be admissible under ER 701 as lay opinion.

it need not meet the rigors of a scientific theory. *State v. Ortiz*, 119 Wn.2d 294, 310-11, 831 P.2d 1060 (1992). The expert testimony in this case regarding the significance of the absence of drug user paraphernalia in Sanders' residence does not concern sophisticated or technical matters. Therefore, the testimony did not have to be supported by any scientific theory or principle. Indeed, it is hard to imagine what scientific theory or test could be applied to expert testimony of this kind, which is based on the witness' training, experience and observations on the job. *State v. Ortiz, supra; State v. Smith*, 88 Wn.2d 639, 647, 564 P.2d 1154 (1977), *overruled on other grounds in State v. Jones*, 99 Wn.2d 735, 664 P.2d 1216 (1983).

■ Sanders' argument that "there was no basis for concluding that [the officer's] experience provided a basis for the inference he made" is also made for the first time on appeal and, for the reasons stated above, need not be considered. However, as with the foundation objection, there was no basis for an objection on this ground at trial, and the argument on appeal lacks merit. Under ER 703 and 705, expert opinions can be admitted "without foundation except for testimony establishing the expert's qualifications." 5A K. Tegland, Wash. Prac., *Evidence* § 311, at 482 (3d ed. 1989); *Cornejo v. State*, 57 Wn. App. 314, 329, 788 P.2d 554 (1990).[4] The officer testified to extensive experience and training in drug enforcement. Given this testimony, the trial court could properly admit the evidence over any objection based on foundation or expertise. *See Ortiz*, 119 Wn.2d at 310; *State v. Strandy*, 49 Wn. App. 537, 745 P.2d 43 (1987) (police officer with experience in drug transactions qualified to testify as an expert on the fact that numbers on a piece of paper in the defendant's wallet were consistent with numbers commonly used in narcotics transactions), *review denied*, 109 Wn.2d 1027 (1988).

---

[4]The defense was free to challenge the officer's opinion, and did so, cross-examining the officer as to the basis for that opinion. *See Cornejo*, 57 Wn. App. at 329; *State v. Anderson*, 41 Wn. App. 85, 99, 702 P.2d 481 (1985), *rev'd on other grounds*, 107 Wn.2d 745, 733 P.2d 517 (1987).

Sanders also argues the ground on which counsel objected at trial; *i.e.*, that the officer's opinion was an impermissible comment on her guilt. She contends that the officer's opinion testimony violated her right to a trial by an impartial trier of fact and her right to have the jury make an independent evaluation of the facts.

Under ER 704, " '[t]estimony in the form of an opinion or inferences otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact.' " *State v. Jones*, 59 Wn. App. 744, 749-50, 801 P.2d 263 (1990), *review denied*, 116 Wn.2d 1021 (1991); *State v. Wilber*, 55 Wn. App. 294, 777 P.2d 36 (1989). However, "[n]o witness, lay or expert, may testify to his opinion as to the guilt of a defendant, whether by direct statement or inference." *State v. Black*, 109 Wn.2d 336, 348, 745 P.2d 12 (1987); *State v. Madison*, 53 Wn. App. 754, 770 P.2d 662, *review denied*, 113 Wn.2d 1002 (1989). Such an opinion violates the defendant's right to a trial by an impartial jury and her right to have the jury make an independent evaluation of the facts. *Wilber*, 55 Wn. App. at 297. An opinion as to the guilt of the defendant is particularly prejudicial and improper where it is expressed by a government official, such as a sheriff or a police officer. *State v. Carlin*, 40 Wn. App. 698, 700 P.2d 323 (1985).

In general, testimony deemed to be an opinion as to a defendant's guilt must relate directly to the defendant. *Wilber*, 55 Wn. App. at 298. For example, a police officer's testimony that a police dog tracked the defendant by following a fresh "guilt scent", and an ambulance driver's testimony that the defendant's reaction to news of his wife's death was unusually "calm and cool" were considered inadmissible opinions as to the defendant's guilt. *Carlin*, 40 Wn. App. at 703; *State v. Haga*, 8 Wn. App. 481, 490, 507 P.2d 159, *review denied*, 82 Wn.2d 1006 (1973). Similarly, in *Black*, the court held that expert testimony to the effect that a victim suffered from rape trauma syndrome was, in essence, a statement that the victim had not consented and the defendant was guilty of the crime of rape. Since the

defense was consent, the testimony was therefore inadmissible. 109 Wn.2d at 348.

On the other hand, testimony that the complaining witness exhibited behavior "typical of a sex abuse victim" is not an opinion on the guilt or innocence of the defendant. *Madison*, 53 Wn. App. at 760. Likewise, in *State v. Toennis*, 52 Wn. App. 176, 185, 758 P.2d 539, *review denied*, 111 Wn.2d 1026 (1988), the court held that testimony that a particular injury or group of injuries to a child was not accidental and was inconsistent with the defendant's explanation, but was instead consistent with physical abuse by a person of mature strength, was not an opinion usurping the function of the jury. The court reasoned that such testimony still leaves to the jury the question of whether the injuries were caused by the defendant. In *Jones*, the court held that expert testimony as to the cause of death in a manslaughter trial, though embracing an issue for the trier of fact (*i.e.*, credibility), did not constitute an opinion on the guilt of the defendant or invade the jury's function. In so holding, this court noted that the expert's opinion was based on inferences from the evidence, not on an opinion of a witness' credibility, and the jury was still left to decide whether it was Jones who actually inflicted the injury. *Jones*, 59 Wn. App. at 749-51; *see also State v. Simon*, 64 Wn. App. 948, 964, 831 P.2d 139 (1991) (a description of the coercive nature of the pimp/prostitute relationship is not a comment on defendant's guilt on charge of promoting prostitution). Finally, the court recognized that the jury retained its responsibility for determining what weight should be given the expert's testimony. *See also Ortiz*, 119 Wn.2d at 311; *State v. Cleveland*, 58 Wn. App. 634, 794 P.2d 546, *review denied*, 115 Wn.2d 1029 (1990), *cert. denied*, 111 S. Ct. 1415 (1991).

Under the circumstances of this case, Officer Murry's testimony did not amount to an opinion as to Sanders' guilt. His opinion was an inference based solely on the physical evidence and his experience. He did not express any opinion as to Sanders' guilt or credibility. In fact, his opinion that

the absence of drug user paraphernalia "indicates that that house is not used for that purpose and the persons within do not do so frequently at all" left open the possibility that the cocaine recovered in the search was used by someone other than Sanders for personal use only. The opinion was also not inconsistent with Sanders' testimony that she had no knowledge of the cocaine found in the residence and that a woman she did not know had used the telephone in the room where the cocaine was found. Thus, the opinion left to the jury the question of whether Sanders had unwittingly possessed the cocaine. For these reasons, the officer's opinion was not an opinion as to Sanders' guilt, and the trial court properly overruled the objection.

## III
### UNWITTING POSSESSION INSTRUCTION

Sanders next contends the trial court erred in giving an instruction on "unwitting possession". The instruction at issue reads:

> The law will not convict a person of possession of a controlled substance if the possession is "unwitting", that is, if the person did not know that the substance was present or did not know the nature of the substance. However, once the plaintiff has proved possession, either actual or constructive, the burden of proving that the possession was unwitting shifts to the defendant, who must affirmatively prove the same by a preponderance of the evidence.
>
> Proof by a preponderance of the evidence means that you must be persuaded, considering all the evidence in the case bearing on the question, that the proposition on which that party has the burden of proof is more probably true than not true.

This instruction was appropriate on the lesser included offense of simple possession of a controlled substance because knowledge of the nature or presence of the substance is not an element of that crime. Therefore, "unwitting" or lawful possession is an affirmative defense to be proved by the defendant. *State v. Sims*, 119 Wn.2d 138, 142, 829 P.2d 1075 (1992); *State v. Adame*, 56 Wn. App. 803, 807, 785 P.2d 1144, *review denied*, 114 Wn.2d 1030 (1990).

"Guilty knowledge" is not an element of the greater offense of possession with intent to deliver either, but for a different reason. Because "[i]t is impossible for a person to intend to manufacture or deliver a controlled substance without knowing what he or she is doing", *Sims*, 119 Wn.2d at 142, the requisite knowledge is subsumed under the statutory requirement that the defendant intended to deliver a controlled substance. The "unwitting" possession instruction does not apply to possession with intent to deliver, because under the court's analysis in *Sims*, one must know it is a controlled substance in order to intend to deliver it.

▮ Sanders argues that the jury could have mistakenly applied the "unwitting" possession instruction to the crime of possession with intent to deliver and thereby improperly relieved the State of its burden of proving guilty knowledge.[5] However, the State correctly points out that this instruction, which immediately followed the court's instruction on the lesser included offense of possession, expressly states that "[t]he law will not convict a person *of possession* of a controlled substance if the possession is 'unwitting' ". (Italics ours.) By its terms, the instruction is limited to the crime of possession and does not purport to apply to the crime of possession with intent to deliver. Furthermore, the court's instruction on possession with intent to deliver plainly required the State to prove beyond a reasonable doubt that Sanders *knew* that the substance she possessed was a controlled substance. Taken as a whole, the only reasonable reading of the instructions is that the unwitting possession instruction applies only to the lesser included offense of possession, and that the jury was instructed that the State had to prove guilty knowledge in order to convict Sanders of the crime of possession with intent to deliver. Juries are

---

[5]*Sims* was decided after the briefs in this case were filed. In light of *Sims*, we take Sanders' argument to be that the State's burden of proving Sanders' mental state was lessened by the unwitting possession instruction. At the time this case was briefed, the parties assumed "guilty knowledge" was an element of possession with intent to deliver. *See State v. Boyer*, 91 Wn.2d 342, 588 P.2d 1151 (1979) ("guilty knowledge" is a common law element of *delivery* of a controlled substance).

presumed, in the absence of evidence to the contrary, to have followed the court's instructions in their deliberations. *State v. Allen*, 50 Wn. App. 412, 749 P.2d 702, *review denied*, 110 Wn.2d 1024 (1988). There is no evidence here that the jury failed to follow the instructions.

Affirmed.

The remainder of this opinion has no precedential value. Therefore, it will not be published, but has been filed for public record. *See* RCW 2.06.040; CAR 14.