[Nos. 13131-9-III; 13228-5-III.   Division Three.   May 30, 1995.]

THE STATE OF WASHINGTON, *Respondent*, v. GARY LEE LEWELLYN, *Petitioner*.

THE STATE OF WASHINGTON, *Petitioner*, v. RODGER SMITH, *Respondent*.

---

*Bernard W. McNallen*, for petitioner Lewellyn.

*Brian C. O'Brien* and *Charles S. Dorn*, for respondent Smith.

*James R. Sweetser, Prosecuting Attorney*, and *Carlin M. Jude, Stefanie Walter*, and *Joseph Todd Reuter, Deputies*, for the State.

SWEENEY, J. —

FACTS

State v. Lewellyn

At approximately 1:30 A.M. on April 18, 1992, while on routine patrol, State Trooper Brian Blake came upon a vehicle traveling south on Craig Road in Spokane County. The vehicle, operated by Gary Lewellyn, crossed the center

line five times within a mile and one-half distance. The fifth time the vehicle straddled the center line, Mr. Lewellyn traveled in the oncoming lane for several hundred feet. Trooper Blake activated his lights and stopped the car.

The trooper asked Mr. Lewellyn for his license; Mr. Lewellyn had difficulty finding it. Trooper Blake smelled the odor of intoxicants on Mr. Lewellyn's breath and asked Mr. Lewellyn to perform field sobriety tests. He agreed. Mr. Lewellyn exited the vehicle and leaned on it, apparently to keep his balance. His speech was slow and slurred and his balance was poor. The first test Trooper Blake administered was a "walk and turn." Mr. Lewellyn could not keep his balance while listening to the instructions. He stopped while walking, to steady himself, and could not touch his heel to his toe. Mr. Lewellyn stepped off the line four times and did not follow instructions. When asked to do the "one leg stand," he swayed while balancing and used his arms to balance. When asked to recite the alphabet, Mr. Lewellyn responded, "A B C H Q H." Trooper Blake arrested Mr. Lewellyn for driving while under the influence (DWI).[1]

His case was tried to a jury, in district court. At trial, Trooper Blake related his training, experience and the results of the field sobriety tests. He was then permitted, over objection of Mr. Lewellyn, to express the following opinion: "My opinion was that Mr. Lewellyn had too much to drink to drive and he was under the influence of alcohol." Asked the basis for his decision to arrest Mr. Lewellyn, Trooper Blake responded: "The results of the field sobriety tests, the driving I observed, his speech was slow and slurred, his tongue was coated white, his eyes were red and blood shot. He had very poor balance."

---

[1]Mr. Lewellyn was subsequently given implied consent warnings and Trooper Blake administered a BAC Verifier DataMaster breath test. For reasons unclear in the record, the results of that test were not presented to the jury.

The jury was properly instructed[2] and convicted Mr. Lewellyn of DWI. He moved for a new trial in Spokane County Superior Court based primarily on the District Court's admission of Trooper Blake's opinion regarding his degree of sobriety. The court ruled that the testimony was proper and affirmed the conviction. He now appeals.

State v. Smith[3]

At about midnight on August 11, 1991, Washington State Trooper Richard Wiley was driving southbound on Monroe Street in Spokane. As he approached a curve in the road, he noticed a vehicle starting to veer over the center line into his lane of traffic. Trooper Wiley veered to avoid a collision, immediately turned around and activated his emergency equipment. The vehicle stopped.

When Trooper Wiley approached the driver of the vehicle, Rodger Smith, he smelled the odor of intoxicants on his breath. He asked for Mr. Smith's driver's license, registration and proof of insurance. As Mr. Smith looked for these items, Trooper Wiley noticed that Mr. Smith had poor finger dexterity. He asked Mr. Smith if he would be willing to perform a field sobriety test; Mr. Smith agreed. The trooper noticed that Mr. Smith had a "strong odor of intoxicants, his eyes were blood shot and watery." Trooper Wiley had Mr. Smith perform several field sobriety tests which, apparently, led him to the conclusion that Mr. Smith was intoxicated. He gave Mr. Smith a portable breath test and placed him under arrest for DWI. The results of the portable breath test were not recorded.

Mr. Smith was transported to the Spokane County Public Safety Building where he was given implied consent warnings. A BAC Verifier DataMaster test administered

[2]"A person is under the influence of or affected by the use of intoxicating liquor if the person's ability to drive a motor vehicle is lessened in any appreciable degree." 11A Wash. Prac., WPIC 92.10, at 177 (2d ed. 1994). (Instruction 6.)

[3]*City of Seattle v. Heatley*, 70 Wn. App. 573, 854 P.2d 658 (1993), *review denied*, 123 Wn.2d 1011 (1994), was decided after the trial judge's ruling in this case and, accordingly, the trial judge did not have the benefit of that opinion.

later resulted in a reading of .12. Mr. Smith was then charged with DWI.

Prior to his trial, Mr. Smith moved in limine to exclude the opinion of Trooper Wiley regarding Mr. Smith's level of intoxication. The court denied the motion. At trial, over objection, Trooper Wiley was permitted to express the following opinion: "I felt that he was obviously intoxicated and I — at that time placed him under arrest for DWI." The jury convicted Mr. Smith as charged.

His motion for a new trial was denied and he then appealed to superior court. There the court concluded that the District Court had erred in precluding Mr. Smith from asking about the hand-held or portable breath testing. It also concluded that the District Court had erred in permitting Trooper Wiley to express an opinion on Mr. Smith's level of intoxication, because it represented an "opinion on the ultimate issue to be decided by the jury." The State of Washington sought discretionary review on April 27, 1993. Mr. Smith also appeals admission of the BAC results.

Both cases involve identical issues of law and we, therefore, consolidate them for purposes of this opinion. RAP 3.3(b).

## DISCUSSION

We begin by noting that the decision to admit expert testimony is a matter within the discretion of the trial court. *State v. Ortiz*, 119 Wn.2d 294, 310, 831 P.2d 1060 (1992); *State v. Guloy*, 104 Wn.2d 412, 429, 705 P.2d 1182 (1985), *cert. denied*, 475 U.S. 1020 (1986). And those decisions will not be overturned absent an abuse of that discretion. *Guloy*, 104 Wn.2d at 430.

It is also well settled, however, that a witness may not give an opinion as to the defendant's guilt, whether by direct statements or inferences. *State v. Sanders*, 66 Wn. App. 380, 387, 832 P.2d 1326 (1992), *relying on State v. Black*, 109 Wn.2d 336, 348, 745 P.2d 12 (1987); *State v. Madison*, 53 Wn. App. 754, 770 P.2d 662, *review denied*, 113 Wn.2d 1002 (1989). This is because an opinion as to

the defendant's guilt violates the "defendant's right to a trial by an impartial jury and [the defendant's] right to have the jury make an independent evaluation of the facts." *Sanders*, 66 Wn. App. at 387. As stated in *Sanders*, 66 Wn. App. at 387, "[a]n opinion as to the guilt of the defendant is particularly prejudicial and improper where it is expressed by a government official, such as a sheriff or a police officer." There are, however, factual questions, many of which bear upon the question of guilt or innocence, in which opinions are permitted.

The phrase "under the influence" means "any influence which lessens in any appreciable degree the ability of the accused to handle his automobile." (Italics omitted.) *State v. Hansen*, 15 Wn. App. 95, 96, 546 P.2d 1242 (1976) (quoting *State v. Hurd*, 5 Wn.2d 308, 315, 105 P.2d 59 (1940)). It is well settled in Washington that a lay witness may express an opinion regarding the level of intoxication of another. *State v. Forsyth*, 131 Wash. 611, 612, 230 P. 821 (1924) (quoting *State v. Dolan*, 17 Wash. 499, 513, 50 P. 472 (1897) (Intoxication is "not a question upon which only an expert could express an opinion. The witness having seen, noted and stated the condition, appearance and actions of Dolan, had sufficiently shown his qualification to testify as to the extent of his intoxication.")). Since the decision in *Forsyth*, this state has adopted the Federal Rules of Evidence, which also accommodate the opinions of lay witnesses:

> If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue.

ER 701.

The comments following ER 701 reinforce the notion that a lay witness may express an opinion regarding the degree of sobriety:

> Some examples of admissible opinion testimony are: . . .

mental responsibility of another . . . . [5 Robert] Meisenholder[, Wash. Prac., Evidence] § 341 (1975 Supp.).

. . . It [ER 701] assumes that the witness will give his testimony by stating his observations in as raw a form as practicable, but permits him to resort to inferences and opinions when this form of testimony will be helpful. Both rules [ER 401 and ER 701] give the trial court a wide latitude of discretion. As a practical matter, rule 701 is unlikely to change Washington law.

ER 701 cmt.

■ Division One recently passed on the same question in *Seattle v. Heatley*, 70 Wn. App. 573, 854 P.2d 658 (1993), *review denied*, 123 Wn.2d 1011 (1994).[4] We find the reasoning of *Heatley* persuasive. The court there, after noting the general rule precluding testimony on an ultimate issue of fact, goes on to conclude that "testimony that is not a direct comment on the defendant's guilt or on the veracity of a witness, is otherwise helpful to the jury, and is based on inferences from the evidence is not improper opinion testimony." *Heatley*, 70 Wn. App. at 578.

■ After concluding that an officer's opinion was not objectionable merely because it included comments on the ultimate issue of fact, the court turned to the question of whether the testimony was "otherwise admissible."[5] It noted that the officer did not directly comment on guilt or the credibility of witnesses, and that his opinion was based on direct observations and experience. *Heatley*, 70 Wn. App. at 579. The court reasoned that if a lay witness is

---

[4]Actually, the opinion expressed in *Heatley* was arguably more clearly a comment on the ultimate issue of fact than those expressed here: "Based on my, his physical appearance and my observations of that and based on all the tests I gave him as a whole, I determined that Mr. Heatley was obviously intoxicated and affected by the alcoholic drink that he'd been, he could not drive a motor vehicle in a safe manner. At that time, I did place Mr. Heatley under arrest for DWI." *Heatley*, 70 Wn. App. at 576.

[5]"An opinion which lacks proper foundation or is not helpful to the trier of fact is not admissible under ER 701 or ER 702. An *otherwise admissible* opinion may be excluded under ER 403 if it is confusing, misleading, or if the danger of unfair prejudice outweighs its probative value." (Italics ours.) *Heatley*, 70 Wn. App. at 579.

permitted to express such an opinion, there is no logical reason why an expert should not be permitted to express such an opinion. *Heatley*, 70 Wn. App. at 580.

There are, without question, issues which arise during the course of a DWI trial which are appropriately reserved for the opinion of experts. Examples would include the rate at which alcohol dissipates in the human body, *Seattle v. Personeus*, 63 Wn. App. 461, 465, 819 P.2d 821 (1991), the scientific principles underlying operation of the BAC Verifier DataMaster, or the number and types of drinks, given the weight of a person, required to reach a given blood alcohol level, *see State v. Smissaert*, 41 Wn. App. 813, 814-15, 706 P.2d 647, *review denied*, 104 Wn.2d 1026 (1985). But the level of intoxication manifested by a person's demeanor is not one of them.

Mr. Lewellyn introduced the testimony of lay witnesses who also expressed opinions about his respective level of intoxication. It would be an anomalous result indeed if an arresting officer were unable to express an opinion regarding the degree of sobriety because of additional training and experience.

An expert is permitted to express opinions on subjects which a lay witness is not because of additional training and experience. *Sanders*, 66 Wn. App. at 386. The expert does not, or at least should not, by virtue of this additional training lose the ability to also express opinions which would be permitted by a lay witness.

### Smith—Admissibility of the Portable Breath Test

■ Mr. Smith first asserts that the officer intentionally refused to record the results of the portable test.[6] The Superior Court disagreed: "This Court does not find that omission of this test from the arresting officer's reports

---

[6]Analysis of a person's blood or breath is valid only when performed according to the methods approved by the state toxicologist and by a person possessing a valid permit issued by the state toxicologist. RCW 46.61.506(3). The BAC Verifier DataMaster is the only infrared breath test instrument approved by the state toxicologist to measure alcohol in a person's breath. WAC 448-13-020.

was intentional." The finding is not challenged and therefore is a verity on appeal. *State v. Herzog*, 69 Wn. App. 521, 526, 849 P.2d 1235 (1993).

■ Notwithstanding the court's finding, in *State v. Ortiz*, 119 Wn.2d 294, a plurality of the court adopted the federal test for determining whether a defendant's right to due process was violated when evidence was not preserved, citing *Arizona v. Youngblood*, 488 U.S. 51, 109 S. Ct. 333, 102 L. Ed. 2d 281 (1988). The right to due process is, however, limited; for purposes of applying the due process analysis, the evidence must be "material exculpatory evidence." *State v. Wittenbarger*, 124 Wn.2d 467, 475, 880 P.2d 517 (1994). The defendant must show not only that the evidence would have exonerated him, but the evidence must "possess an exculpatory value that was apparent before it was destroyed and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." *Wittenbarger*, 124 Wn.2d at 475 (citing *California v. Trombetta*, 467 U.S. 479, 489, 104 S. Ct. 2528, 81 L. Ed. 2d 413 (1984)). Mr. Smith has not demonstrated the evidence would be exculpatory. A subsequently administered breath test indicated Mr. Smith's blood alcohol content was .12. The portable test would likely have been more inculpatory than exculpatory. *Wittenbarger*, 124 Wn.2d at 475. The decision of the Superior Court holding that the District Court erred in refusing to admit the results of the portable breath test is error.

■ ■ Mr. Smith also argues, by way of cross-appeal, that results of the BAC breath test were improperly admitted because the portable breath test was an illegal search. But his argument ignores the fact that he was placed under arrest before Trooper Wiley administered the portable breath test. "Probable cause for a warrantless arrest exists when facts and circumstances within the arresting officer's knowledge are sufficient to cause a person of reasonable caution to believe that a crime has been committed." *Bokor v. Department of Licensing*, 74 Wn. App. 523,

527, 874 P.2d 168 (1994) (quoting *State v. Rogers*, 70 Wn. App. 626, 631, 855 P.2d 294 (1993), *review denied*, 123 Wn.2d 1004 (1994)). Probable cause is a prerequisite to the application of the implied consent statute. *Bokor*, 74 Wn. App. at 527 (citing *Keefe v. Department of Licensing*, 46 Wn. App. 627, 731 P.2d 1161, *review denied*, 108 Wn.2d 1018 (1987)). To determine whether the officer had probable cause for the arrest, the court looks to the facts and circumstances known to the officer. *Bokor*, 74 Wn. App. at 526.

Here, Trooper Wiley placed Mr. Smith under arrest based on his observation that Mr. Smith swerved his vehicle, had the odor of alcohol on his breath, had poor finger dexterity, had bloodshot and watery eyes, and his performance on the field sobriety tests. His determination that probable cause existed was not based on data obtained from the technical device. *See Bokor*, 74 Wn. App. at 526. The officer's observations amply support the arrest for DWI. The BAC breath test was not the product of illegally seized evidence.

The decision of the trial court affirming Mr. Lewellyn's conviction is affirmed. The decision of the trial court reversing Mr. Smith's conviction is reversed.

THOMPSON, C.J., and MUNSON, J., concur.

After modification, further reconsideration denied August 3, 1995.

Review granted at 128 Wn.2d 1011 (1996).