FILED
COURT OF APPEALS
DIVISION II

2013 JUL -9 AM 9: 09

STATE OF WASHINGTON

BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 42525-4-II |
| Respondent, | UNPUBLISHED OPINION |
| v. | |
| STEPHEN K. LEWIS, | |
| Appellant. | |

BJORGEN, J. — Following a bench trial, the trial court found Stephen Lewis guilty of failure to register as a sex offender. Lewis appeals his conviction, asserting that the trial court erred by (1) permitting witnesses to testify as to their opinion of whether he resided at his registered address and (2) permitting a witness to testify as to her opinion about another witness's credibility. In his statement of additional grounds for review (SAG),[1] Lewis asserts that (1) he was subjected to an unlawful search when law enforcement officers conducted a home visit while he was in police custody, (2) his defense counsel was ineffective for failing to move for a suppression hearing, and (3) the prosecutor committed misconduct by pursuing charges based on evidence seized in an illegal search. In his SAG Lewis also repeats his appellate counsel's arguments regarding the trial court's admission of opinion testimony.

We hold that the trial court did not err in admitting the witnesses' opinions whether Lewis resided at his registered address and, alternatively, that if the court did err by admitting these opinions, any error was harmless. We also hold that Lewis has failed to preserve for

---

[1] RAP 10.10.

appeal his challenge to testimony he claims constituted an improper opinion on another witness's credibility. Finally, we hold that Lewis's SAG arguments lack merit, and we affirm his conviction.

FACTS

In 2001 Lewis was convicted of second degree assault with sexual motivation, which triggered the sex offender registration requirements of RCW 9A.44.130. On August 20, 2007, Lewis completed a sex offender "full registration packet" with the Pierce County Sheriff's Department Sex Offender Registration Unit, which packet included a change of address form, a booking identification sheet, and a copy of state sex offender registration laws signed by Lewis. Report of Proceedings (RP) at 36. On that same date, Lewis also signed a separate form that indicated he understood the sex offender registration laws.

On December 11, 2009, Lewis registered a change of address to 1422 South Washington Street in Tacoma. Rachel Eschenfelder rented the home at that address and lived there with her three children. Rodron Neal, Lewis's longtime friend and Eschenfelder's boyfriend, also lived at the home. Neal was subject to a drug offender sentencing alternative (DOSA) sentence and received permission from his community corrections officer, Kelly Anne Stave, to have Lewis reside in the home. Lewis also received permission from his community corrections officer, Michael Monahan, to live at Eschenfelder's home. Monahan ended his supervision of Lewis in January of 2010, and Pamela Bohon became Lewis's new community corrections officer.

On February 17, 2010, Bohon went to Lewis's registered address to verify that he was residing there. Lewis was not at the home when Bohon arrived, but Neal showed her the basement of the home where he claimed Lewis slept. Bohon saw a couch in the basement, but

No. 42525-4-II

did not see any bed, dresser or clothes. Bohon also did not recall seeing any personal effects or toiletry items in the basement. On March 24, Bohon again attempted to contact Lewis at his registered address, but Lewis was not present at the home when she arrived.

Between December 11, 2009 and April 12, 2010, Stave, the community corrections officer supervising Neal, visited with him at the home on at least four occasions. She did not see Lewis at the residence during any of her visits.

On April 14, 2010, Tacoma Police Sergeant Jennifer Mueller and Tacoma Police Detective William Foster went to Lewis's registered address to verify that he was residing there. Eschenfelder told Mueller that Lewis was not residing at the house but allowed Mueller to look in the basement, the area of the house Eschenfelder said Lewis would have been staying in if he had lived there. Mueller saw a couch and a suitcase in the basement, but did not see a bed, closet, personal effects, toiletries, or "anything that would lead [her] to believe somebody was living there." RP at 78. Although Mueller saw a basement door that led to the outside of the home, she noticed that the door could not be opened from the outside.

The State charged Lewis by amended information with failure to register as a sex offender during the period of December 11, 2009 to April 12, 2010.

Before trial, Lewis moved in limine to exclude testimony from the State's witnesses giving their opinion that he did not reside at his registered address. The trial court declined to rule on Lewis's motion before trial, indicating that it would take up the issue during trial and outside the presence of the jury. Shortly before jury selection was to begin, Lewis indicated that he wanted to waive his jury trial right, and the trial court proceeded to a bench trial. When the subject of Lewis's motion came up at trial, the trial court denied the motion, stating:

3

I did read the two cases that were cited by [defense counsel] in his motion in limine. . . . [O]ne of the cases dealt with redacting something that was said during an interview with the defendant and the officer's comments about—I think the credibility of the defendant. The other one had to do with an expert witness' opinion in regards to a rape case as to rendering an opinion regarding him making a reference, I think, as to whether or not there had been a rape that had occurred based on his exam. I just don't find those applicable to this particular case.

I think the officers who went to the scene, i.e., this house that was listed as his residence, can observe—can testify as to what they observed. Again, I'll allow counsel to object, but if proper foundation is, in fact, laid, they can render an issue [sic] as to whether they believe the defendant was living there or not. What weight I give to that opinion obviously is based on the Court's discretion in observing what weight that any jury would give to a witness' testimony.

RP at 68-70.

At trial, Eschenfelder testified that Lewis never resided at her home, that he never stayed overnight, and that he never stayed at the house while she was present. Although Eschenfelder stated that Lewis did not reside at her home, she testified that she had allowed him to receive mail at her address and that she had allowed him to store a suitcase in her home. Eschenfelder also testified that it would have been impossible for Lewis to have resided at her home and for her not to have seen him there.

Neal testified that he gave Lewis permission to reside at the house with the condition that Lewis not stay at the house when he was not present. Neal also testified that he worked five to six days a week, from noon until 8:00 p.m., and that he worked three days a week, from 10:00 p.m. until 6:00 a.m., at a second job. Neal stated that he gave Lewis a key to the house and that Lewis would always call him before coming to the house. Neal also stated that Lewis did not pay rent and rarely stayed at the house on weekends. Finally, Neal testified that Eschenfelder knew Lewis was sleeping in the basement but that she "never really saw him" at the house. RP at 227-28.

4

Lewis testified that he lived at his registered address from December 11, 2009 until returning to custody on April 13, 2010. Lewis stated that he lived in the home's basement on a couch and that he brought only a single suitcase containing clothing and shoes with him when he moved into the home. Lewis also stated that he would always call Neal before going to the house and that he stayed at the house at least five days a week. When confronted about Eschenfelder's testimony, Lewis stated that she had lied.

The trial court found Lewis guilty of failure to register as a sex offender and sentenced him to 43 months of incarceration to be served concurrently with a conviction out of the King County Superior Court. The trial court's findings of fact and conclusions of law indicate that the trial court found that Mueller, Bohon, Stave, and Eschenfelder were credible witnesses and that Neal and Lewis were not credible witnesses. The trial court's findings also noted that "Mueller made a finding that defendant had absconded," and that "Bohon concluded that defendant did not reside at 1422 South Washington Street." Clerk's Papers at 51-52. Lewis timely appeals his conviction.

ANALYSIS

I. OPINION TESTIMONY

Lewis first contends that the trial court improperly admitted opinion testimony from a police officer and two community corrections officers that Lewis was guilty of failing to register as a sex offender. These opinions of guilt were presented, Lewis argues, through those witnesses' opinions that Lewis did not reside at his registered address. Although the State conceded that the trial court erred by admitting the challenged opinion testimony, we disagree

No. 42525-4-II

with the State's concession and hold that the trial court properly admitted the witnesses' testimony as to whether Lewis resided at the address.

We review a trial court's decision to admit opinion testimony for an abuse of discretion. *State v. Ortiz*, 119 Wn.2d 294, 308, 831 P.2d 1060 (1992). Generally, no witness, lay or expert, may "'testify to his opinion as to the guilt of a defendant, whether by direct statement or inference.'" *City of Seattle v. Heatley*, 70 Wn. App. 573, 577, 854 P.2d 658 (1993) (quoting *State v. Black*, 109 Wn.2d 336, 348, 745 P.2d 12 (1987)). However, testimony is not improper as this sort of opinion if it "is not a direct comment on the defendant's guilt or on the veracity of a witness, is otherwise helpful to the [fact finder], and is based on inferences from the evidence." *Heatley*, 70 Wn. App. at 578. In addition, opinion testimony is not improper merely because it involves ultimate factual issues. *Heatley*, 70 Wn. App. at 578; see *also State v. Montgomery*, 163 Wn.2d 577, 590, 183 P.3d 267 (2008) (mere fact that opinion testimony addresses an issue that the jury has to pass upon does not call for automatic exclusion of the testimony). Lay witnesses may give opinions or inferences based upon rational perceptions that help the fact finder understand the witness's testimony when the testimony is not based on scientific or specialized knowledge. *Montgomery*, 163 Wn.2d at 591. In this manner, a witness may express an opinion on an ultimate issue of fact so long as the witness does not tell the fact finder what result to reach. *Montgomery*, 163 Wn.2d at 590-91.

Whether testimony constitutes an impermissible opinion on the guilt of the defendant or a permissible opinion embracing an "ultimate issue" will generally depend on the specific circumstances of each case, including the type of witness involved, the specific nature of the testimony, the nature of the charges, the type of defense, and the other evidence before the trier

6

of fact. *Heatley*, 70 Wn. App. at 579. We afford the trial court broad discretion to determine the admissibility of ultimate issue testimony. *Heatley*, 70 Wn. App. at 579. However, "expressions of personal belief, as to the guilt of the defendant, the intent of the accused, or the veracity of witnesses" are clearly inappropriate opinion testimony in a criminal trial. *Montgomery*, 163 Wn.2d at 591.

Here, the State asked Mueller what she had observed in the basement room where Lewis claimed to have been living. Mueller replied that she saw a couch and suitcase but did not see a bed, closet, personal effects, toiletries, or "anything that would lead [her] to believe somebody was living there." RP at 78. The State then asked Mueller:

> Now, Sergeant, based upon your training and experience—without indicating what your opinion may ultimately be—as well as your personal observations of the residence, at the end of your time at 1422 South Washington that day, did you ultimately form an opinion as to whether or not the defendant was residing there?

RP at 79. Following defense counsel's overruled objection, Mueller answered that she did form an opinion. The State then asked Mueller what her opinion was, and she responded, "That he was not residing at the residence." RP at 80.

Bohon similarly testified about what she had observed in the basement, stating that she saw a couch but did not see a bed, dresser, or clothes. The State then elicited the following testimony from Bohon:

> [State]:  Now, based upon your training and your experience and your observations of the residence and your interactions with the defendant, without indicating what it was, did you form an opinion as to whether or not the defendant was residing at that location?
> [Bohon]:  Yes, I did.

> [State]: What was that opinion?
> [Bohon]: Very unlikely that he was living there.

RP at 112-13.

Stave testified regarding her numerous visits with Neal at his home and indicated that she did not see Lewis at the home during any of her visits. The State then asked Stave the following:

> [State]: Officer Stave, did you form an opinion—without telling me what it was—based upon your training and experience as a CCO, as well as your observations of the home as to who was residing at that Washington Street address?
> [Stave]: Yes.
> [State]: What was that opinion?
> [Stave]: My opinion was that it was Mr. Neal and his girlfriend and their children.
> [State]: And was it your opinion, did anyone else reside at that house in addition to the parties you've just mentioned?
> [Stave]: No.

RP 144-45.

Although these statements clearly touch on an ultimate factual issue, they are not direct comments on Lewis's guilt, his intent, or the veracity of any witness. As stated in *Heatley*:

> The fact that an opinion encompassing ultimate factual issues *supports* the conclusion that the defendant is guilty does not make the testimony an improper opinion on guilt. "[I]t is the very fact that such opinions imply that the defendant is guilty which makes the evidence relevant and material." [*State v.*] *Wilber*, 55 Wn. App. [294,] 298 n.1[, 777 P.2d 36 (1989)]. More important, [the officer's] opinion was based solely on his experience and his observation of [the defendant's] physical appearance and performance on the field sobriety tests. The evidentiary foundation "directly and logically" supported the officer's conclusion [that the defendant was intoxicated]. [*State v.*] *Allen*, 50 Wn. App. [412,] 418[, 749 P.2d 702 (1988)]; *see also* [*State v.*] *Sanders*, 66 Wn. App. [380,] 388[, 832 P.2d 1326 (1992)]. Under these circumstances, the testimony did not constitute an opinion on guilt.

*Heatley*, 70 Wn. App. at 579-80. As in *Heatley*, Mueller's, Bohon's and Stave's conclusions were based on their experience in light of their observations at Lewis's registered address. The

evidentiary foundation supports the witnesses' conclusions and their testimony was subject to the fact finder's evaluation and scrutiny. *See State v. Baird*, 83 Wn. App. 477, 485, 922 P.2d 157 (1996) (testimony that is not a direct comment on the defendant's guilt, is based solely on inferences arising from the physical evidence, is not based solely on the defendant's credibility, and is helpful to the jury, does not constitute improper opinion testimony).

In addition, under ER 701 a witness may testify to opinions or inferences when they are rationally based on the perception of the witness and are helpful to the fact finder. "'Where the opinion relates to a core element that the State must prove, there must be a substantial factual basis supporting the opinion.'" *State v. Fallentine*, 149 Wn. App. 614, 624, 215 P.3d 945 (2009) (quoting *State v. Farr-Lenzini*, 93 Wn. App. 453, 462-63, 970 P.2d 313 (1999)). Bohon and Mueller testified to specific factual circumstances supporting their opinion that Lewis did not live at the residence. Although Stave testified that she did not view the basement area of Eschenfelder's home during the time Lewis claimed to reside there, her opinion testimony did recite specific observations about the other areas of the home and, as Neal's community corrections officer, part of her job was to know who else was living at the house. For these reasons, each of the witnesses' opinion testimony rested on the "'substantial factual basis'" required by *Fallentine*, 149 Wn. App. at 624 (quoting *Farr-Lenzini*, 93 Wn. App. at 462-63). Accordingly, the trial court properly admitted the challenged testimony under ER 701.

Even if the trial court had erred in admitting the opinion testimony at issue, such "evidentiary error is reversible only if 'within reasonable probabilities, the outcome of the trial would have been materially affected had the error not occurred.'" *Fallentine*, 149 Wn. App. at 624 (quoting *State v. Brockob*, 159 Wn.2d 311, 351, 150 P.3d 59 (2006)) (internal quotation

marks omitted). Here, any rational fact finder would have arrived at the same conclusion Mueller, Bohon and Stave expressed based on their stated observations of Lewis's claimed residence and living quarters. Further, Eschenfelder's testimony that Lewis never resided in her home, which testimony the trial court found credible, was overwhelming evidence that Lewis was guilty of failure to register as a sex offender. Accordingly, any error in admitting the opinion testimony of the three officers would have been harmless.

## II. TESTIMONY REGARDING THE CREDIBILITY OF A WITNESS

Next, Lewis asserts that the trial court erred by admitting opinion testimony he claims commented on his credibility and on the credibility of another witness. Lewis, however, has failed to preserve this issue on appeal, and we decline to address it.

The State elicited the following testimony from Bohon during redirect examination:

[State]:        During the course of your supervision of the defendant, did you ever form the belief or have concern that Mr. Neal was covering for the defendant not registering—not living at the approved residence?
[Defense counsel]:  I object to the form of that question, Your Honor. It calls for complete speculation. It's a question without foundation.

. . . .

[Trial court]:  I'll overrule and you may answer.
[Bohon]:        I'm sorry. Can you say the question again.
[State]:        Certainly. Did you ever form the belief or become concerned that Mr. Neal was covering for the defendant at the approved address?
[Bohon]:        Yes.
[State]:        What was that belief based upon?
[Bohon]:        Based upon a conversation that I had with Mr. Neal on—let me locate my notes to refresh my memory. On March 24th where Mr. Neal—
[Defense counsel]: I object . . . because that is—calls for hearsay.
[Trial court]:  I would direct the witness that you cannot quote a statement from an out-of-court witness who is not present to testify. So I'll sustain the objection. The part that said based on the conversation that you had with Mr. Neal shall stand.
[State]:        Officer Bohon, aside from any statements made by Mr. Neal, what formed the basis for your belief that Mr. Neal was covering for the defendant?

[Bohon]: The fact that I had not—neither myself nor the other CCO to date had been able to make contact with Mr. Lewis at that location, and I don't recall ever seeing his belongings in the house.

RP at 131-33. Because Lewis did not object to Bohon's testimony on the ground that it was an improper comment on the credibility of another witness, we must first determine whether he may raise this issue for the first time on appeal.

The general rule in Washington is that a party's failure to raise an issue at trial waives the issue on appeal, unless the party can show the presence of an exception to that rule, such as a manifest error affecting a constitutional right. RAP 2.5(a); ER 103; *State v. Robinson*, 171 Wn.2d 292, 304, 253 P.3d 84 (2011); *State v. Kirkman*, 159 Wn.2d 918, 926-27, 155 P.3d 125 (2007). Counsel must make timely objections to preserve errors for appeal or they are deemed waived. *State v. Wicke*, 91 Wn.2d 638, 642, 591 P.2d 452 (1979). Additionally, "[a] party may only assign error in the appellate court on the specific ground of the evidentiary objection made at trial." *State v. Guloy*, 104 Wn.2d 412, 422, 705 P.2d 1182 (1985).

Lewis objected below only on the grounds of hearsay and lack of foundation. Those objections do not preserve the issue on appeal, which is whether Bohon's belief that Neal was covering for Lewis constituted improper opinion testimony about a witness's and the defendant's credibility. Lewis asserts only an evidentiary issue with the admission of Bohon's testimony and does not assert any constitutional error, let alone provide any argument or legal authority on a ground that we could address for the first time on appeal under RAP 2.5(a). *See Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 809, 828 P.2d 549 (1992) (appellate court will not consider arguments unsupported by relevant authority). Under the authority above, this challenge to Bohon's testimony was not preserved for appeal.

## III. SAG ARGUMENTS

In his SAG Lewis first appears to argue that he was subject to an illegal search when law enforcement officers conducted an address verification check on his registered address. We disagree. Here, the record shows that Mueller and Foster went to the address listed in Lewis's registration packet to perform a routine address verification check. There, Eschenfelder told the officers that Lewis did not reside at her home and allowed Mueller to view its basement. We can discern no unlawful search from this set of facts.

Lewis also asserts that his counsel was ineffective for failing to move to suppress evidence seized as a result of the officers' search and that the prosecutor committed misconduct by charging him with a crime based on evidence discovered during an illegal search. Because no illegal search took place, these claims also lack merit.

Finally, Lewis repeats his appellate counsel's argument that the trial court improperly admitted opinion testimony. We addressed this issue as argued by appellate counsel and do not discuss it further with reference to Lewis's SAG.

We hold that the trial court did not err in admitting the witnesses' opinions whether Lewis resided at his registered address and, alternatively, that if the court did err by admitting these opinions, any error was harmless. We also hold that Lewis has failed to preserve for appeal his challenge to testimony he claims constituted an improper opinion on another witness's credibility. Finally, we hold that Lewis's SAG arguments lack merit, and we affirm his

No. 42525-4-II

conviction.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

BJORGEN, J.

We concur:

QUINN-BRINTNALL, J.

JOHANSON, A.C.J.