# IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 71494-5-I |
| Respondent, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| | ) | |
| JAMES ROBERT ANDRE, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | FILED: June 8, 2015 |

SPEARMAN, C.J. — James Andre appeals his conviction for unlawful possession of a firearm in the second degree. He argues that his trial was tainted by improper opinion testimony. We agree and reverse.

## FACTS

On April 30, 2013, Seattle Police Officer William Anderson observed a black GMC Yukon travelling westbound in the 2100 block of North 122nd Street in Seattle, Washington. A routine check of the vehicle's license plate number revealed that the vehicle had been involved in a mail theft committed a few days earlier. The suspect in the mail theft was a white female. Officer Anderson noticed that the driver of the Yukon was white, but could not determine whether the driver was male or female because the driver had a hat on.

Officer Anderson decided to stop the vehicle and investigate the mail theft. He activated his vehicle's emergency lights, but the driver did not respond. When Officer Anderson chirped his siren, the driver responded by increasing his speed

and taking an immediate left turn down a dead end street. The driver sped around a guardrail, through a front yard, over a ditch, and across the adjacent street before colliding with a parked car and a fence at the edge of Northwest Hospital's campus.

After the crash, Officer Anderson observed a man climb out of the driver's side of the Yukon, jump the broken fence, and run into the Northwest Hospital parking lot. Officer Anderson saw the man's face and specifically noted a tattoo on his neck. The officer yelled at the man to get on the ground, but the man continued to run away. Officer Anderson attempted to follow the man, but lost sight of him.

As Officer Anderson continued his search on foot, he radioed for backup and described the suspect. Shortly thereafter, other police and hospital security officers arrived in the area to help with the search. While they continued searching, Officer Anderson went back to the Yukon to investigate the vehicle. A short time later, a Northwest Hospital security guard notified him that a man matching the suspect's description had been seen running through the parking lot. Officer Anderson responded to the area and apprehended the man, whom he was later able to identify as James Andre. Andre was arrested and the Yukon impounded.

On May 2, 2013, Seattle Police Department Sgt. Davisson was assigned as the lead detective on the case. He went to the impound yard and photographed the Yukon's interior. The photos depicted, among other things, a large, older string bass and a smaller, similar shaped string instrument in a black

2

soft case. Sgt. Davison checked police records to determine whether these items had been reported as stolen. He was able to verify that both items had been reported stolen by Scott Teske on April 28, 2013. After Teske identified the instruments as his, Sgt. Davisson obtained a search warrant for the vehicle.

On May 5, 2015, Sgt. Davisson executed the warrant. In addition to the stolen instruments, he found a bag with mail addressed to "Amanda" with several different last names, some women's jewelry, a bag of women's makeup, and a black backpack containing a loaded 9-milimeter Glock 26 pistol. Verbatim Report of Proceedings (VRP) (12/16/13) at 63.

Following the police investigation, Andre was charged with one count of unlawful possession of a firearm in the second degree, one count of possession of stolen property in the first degree, and one count of attempting to elude a pursuing police vehicle.

At trial, Andre stipulated he had a prior conviction that precluded him from lawfully possessing the firearm, but argued the State could not prove he knowingly possessed it. The State offered two types of evidence on the knowledge element: recordings of several of Andre's telephone calls from jail and the testimony of Sgt. Davisson.

The jury heard the following dialogue from a May 13, 2013 call, in which Andre talked to an unidentified female:

Andre:    It's kinda hard to pull over too when I'm sittin ' there with a fuckin' you know a dope pipe and a fuckin' uh, thing in my lap and fuckin...you...(unintelligible).

Andre:    Dude, I was like I can't pull over.

Andre: Oh, but it's good that you're out there at least you know what I mean? I was glad . . .

Female: No.

Andre: ... of that that you didn't get in fuckin' mixed up in that shit. That was (unintelligible) too cause, **I was like well, shit I gotta...you know what I mean?**

Female: Yeah.

Andre: **Yup, get outta here and get this fuckin' heater and shit outta here.**

Female: Where did they find it?

Andre: With me.

Female: Oh, you didn't get rid of it?

Andre: Yeah, but I mean it's I ... I held it in my fuckin' hand so, I mean it's like you know it's only a matter of time.

Exhibit 24 at 5 (emphasis added).

After the jail calls were played to the jury, the parties engaged in a colloquy with the court outside the jury's presence. The prosecutor advised the court that Sgt. Davisson would explain to the jury the meaning of certain slang terms used during the jail phone calls, specifically the term "heater." VRP (12/16/13) at 80. In response, Andre requested that Sgt. Davisson's testimony be limited to general knowledge of the definitions of street slang rather than his personal thoughts or opinion on Andre's meaning or intent at any given time during the jail calls. The prosecutor noted the proposed testimony was limited to "specific terms that [the witness] can define" and agreed that "[w]hat the [witness] believes they were talking about was another matter." VRP (12/16/13) at 82. The

court explicitly asked the prosecutor if he planned to ask Sgt. Davisson "to tell the jury ... what the intention of the calls are?" VRP (12/16/13) at 80. The prosecutor responded, "No. What he believes, no, but about specific terms, yes." Id. The trial court permitted the testimony, but only as it related to the street meaning of slang terms. The court expressly ruled that "the ultimate issue of what the calls are about or the intent of the calls or the conclusion of what type of call it is, it would be up to the jury. . . ." VRP (12/16/13) at 81. The prosecutor then asked for a recess to go through his questions "just to ... make sure that we don't, you know, overstep the court's rulings." Id.

When Sgt. Davisson took the witness stand, the prosecutor played back the portion of the May 13 jail call in which Andre refers to getting rid of a "heater." He noted that Sgt. Davisson had testified earlier that "the word 'heater' was a slang term for a firearm." VRP (12/16/13) at 94. Then, despite the court's earlier ruling, the prosecutor asked Sgt. Davisson, "Based upon your training and experience, what do you think [Andre] was referring to?" VRP (12/16/13) at 94. Inexplicably, the trial court overruled Andre's objection to the question and allowed Sgt. Davisson to testify: "I believe it refers to the gun that was located in the car, and it was also mentioned earlier in the call that he got a pistol charge, so it's kind of continuing on in that conversation." VRP (12/16/13) at 95.

At the close of evidence, the jury found Andre guilty as charged and the court imposed a standard range sentence. Andre appeals.

DISCUSSION

Andre contends that his conviction for unlawful possession of a firearm in the second degree must be reversed because Sgt. Davisson's testimony included an improper opinion on Andre's state of mind, the only disputed element of the crime, thereby invading the province of the jury. We agree.

Generally, a police officer testifying as an expert is permitted to make reasonable inferences based on the evidence and the officer's training and experience. See State v. Stark, 183 Wn. App. 893, 903-04, 334 P.3d 1196, 1202 (2014); City of Seattle v. Heatley, 70 Wn. App. 573, 578-79, 854 P.2d 658 (1993); State v. Sanders, 66 Wn. App. 380, 388, 832 P.2d 1326 (1992). But our Supreme Court has held that expressions of personal belief as to the mental state of the accused are inappropriate for opinion testimony in criminal trials even where such opinions are reasonably based on the facts of the case. State v. Montgomery, 163 Wn.2d 577, 591, 183 P.3d 267 (2008).

Where a criminal defendant's mental state is "the core issue and the only disputed element" of the crime, a police officer's testimony on the issue amounts to an improper opinion on guilt, which impinges the constitutional right to a jury trial. Montgomery, 163 Wn.2d at 594; see also State v. Farr-Lenzini, 93 Wn. App. 453, 462-63, 970 P.2d 313 (1999), superseded on other grounds by RCW 46.61.024 (in prosecution for attempting to elude where State had to prove defendant acted willfully, officer's testimony that defendant was trying to get away was improper opinion on guilt). Police officers' opinions on guilt, whether direct or by inference, are particularly objectionable in criminal cases because,

while they carry an "'aura of reliability,' they have "low probative value because [officers'] area of expertise is in determining when an arrest is justified, not in determining when there is guilt beyond a reasonable doubt." Montgomery, 163 Wn.2d at 595. Accordingly, our Supreme Court has admonished trial counsel to refrain from phrasing questions in such a way that a witness is invited to express their personal beliefs on guilt. Montgomery, 163 Wn.2d at 592 (noting, as one odious example, questions beginning with "do you believe").

In this case, Andre did not dispute his dominion and control over the vehicle where the firearm was located. His sole defense to the firearm charge was that he had no knowledge that the firearm was present in the vehicle, and thus, lacked the requisite mental state. See State v. Anderson, 141 Wn.2d 357, 366-67, 5 P.3d 1247 (2000) (recognizing that knowledge is an implicit element of unlawful possession of a firearm under RCW 9.41.040).

Sgt. Davisson's testimony that when Andre said "heater" in the May 13 jail call he meant the firearm found in the Yukon is tantamount to a statement that Andre knowingly possessed the firearm. This impermissible comment on Andre's mental state is the unsurprising product of the prosecutor's question, "what do you think [Andre] was referring to?" which, like the "do you believe" questions criticized in Montgomery, plainly invited the witness to express his personal beliefs on the issue. VRP (12/16/13) at 94.

Sgt. Davisson's comment on Andre's mental state was an opinion on guilt that should have been excluded from evidence. Because admission of improper opinion testimony violates the constitutional right to a jury trial, it must be

reversed unless it is harmless beyond a reasonable doubt. State v. Dolan, 118 Wn. App. 323, 330, 73 P.3d 1011 (2003), as amended (Oct. 7, 2003) (citing Demery, 144 Wn.2d at 759. We are not persuaded that the evidence here meets this test.

Although the State attempted to establish that Andre had the requisite mental state by presenting recordings of several jail telephone calls, including the May 13 call, in which Andre makes reference to "heater" he had in the vehicle during the police pursuit, none of the conversations identifies the item as a firearm. Thus, while the evidence might support an inference that Andre was referring to a firearm, the jury was also free to accept defense counsel's explanation that Andre was referring to his "pipe" or any other "thing" in the car with him during the police pursuit. VRP (12/17/13) at 121-22. On this record, the prejudicial effect of Sgt. Davisson's testimony is particularly apparent.

Because the trial court's error in admitting Sgt. Davisson's opinion testimony was not harmless beyond a reasonable doubt, we reverse.

WE CONCUR: