Gennaro DeSANTIS, individually and as representative of the Estate of Virginia DeSantis; Pamela Buckner; Terry Elliott; and Cynthia Naeb, Plaintiffs

v.

John S. SIMON, M.D. and Michael Fenoglio, M.D., Defendants.

No. 08SA321.

Supreme Court of Colorado,
En Banc.

June 1, 2009.

As Modified on Denial of Rehearing
June 22, 2009.

The Viorst Law Offices, P.C., Anthony Viorst, Denver, Colorado, Attorneys for Plaintiffs.

Pryor Johnson Carney Karr Nixon, P.C., David D. Karr, Donald E. Lake, Greenwood Village, Colorado, Attorneys for Defendant John S. Simon, M.D.

No appearance by or on behalf of Defendant Michael Fenoglio, M.D.

John W. Suthers, Attorney General, Daniel D. Domenico, Solicitor General, Diana E. Black, Deputy Attorney General, Ilene Wolf Moore, First Assistant Attorney General, Charmaine C. Rose, Assistant Attorney General, Denver, Colorado, Attorneys for Amicus Curiae Colorado Board of Medical Examiners.

Justice HOBBS delivered the Opinion of the Court.

We issued a rule to show cause under C.A.R. 21 in this original proceeding to determine whether the trial court abused its discretion in requiring a doctor in a medical malpractice case to produce all documents in his possession connected with a Colorado State Board of Medical Examiners ("BME") investigation of him.[1] The BME has twice investigated the doctor; the second investigation commenced when the plaintiffs in this lawsuit filed a complaint with the BME against him.[2] As a result of the second

---

1. The issue the petitioner raises for review in this case is: "Whether the trial court erred in denying Dr. Simon's motion for protective order relative to plaintiff's subpoena and notice of deposition for Dr. Simon to produce all materials related to investigations by the [Board of Medical Examiners]."

2. Pam Buckner, on behalf of Virginia DeSantis's family, filed a complaint with the Board of Medi-

investigation, the doctor surrendered his license to practice medicine and the BME entered an order terminating his licensure.

During discovery in connection with a deposition, the plaintiffs subpoenaed "any and all information and documentation relating to disciplinary proceedings brought against [the doctor] by the BME." The doctor responded by filing, under seal with the trial court, a privilege log listing, among other materials, forty-four documents exchanged between the doctor and the BME or between the doctor and the BME's chart auditor. The doctor claimed privilege for these documents under section 12–36–118(10), C.R.S. (2008), of the Medical Practice Act, section 12–36.5–104(10), C.R.S. (2008), of the Professional Review of Health Care Providers Act ("Peer Review Act"), and, in regard to some of the documents, section 13–90–107(1)(d), C.R.S. (2008) (physician-patient privilege).

Neither the plaintiffs nor the doctor requested that the trial court examine the documents listed on the doctor's privilege log in camera or conduct a *Martinelli* analysis to determine whether all, some, or none of those documents should be withheld from discovery or redacted in part. *See generally Martinelli v. Dist. Court*, 199 Colo. 163, 612 P.2d 1083 (1980). Instead, the parties focused on the proper construction of sections 12–36–118(10) and 12–36.5–104(10).

Agreeing with the plaintiffs, the trial court ruled that section 12–36–118(10) of the Medical Practice Act "does not create any privilege or confidentiality in those records or actions by the [BME]" and section 12–36.5–104(10) of the Peer Review Act does not apply because the BME is not a peer review committee. The trial court ordered the doctor to produce all documents in his possession connected with the BME's investigation. The doctor then initiated this original proceeding challenging that order. The BME has filed an amicus brief with us supporting the doctor's confidentiality contentions.

We agree with the trial court that section 12–36.5–104(10) of the Peer Review Act does not apply to this case because the BME is not a peer review committee. We also agree that section 12–36–118(10) of the Medical Practice Act does not directly govern civil discovery requests for the doctor's records. However, when considering whether documents the doctor provided to the BME or received from the BME are discoverable, the trial court may consider any expectation of confidentiality the doctor asserts for records listed in the privilege log. We hold that the trial court abused its discretion in this case by ordering the doctor to produce all of the documents listed in his privilege log without reviewing the documents in camera and conducting a *Martinelli* analysis.

Accordingly, we make our rule absolute and return this case to the trial court for further proceedings.

## I.

The underlying case is a medical malpractice action brought by the heirs of Virginia DeSantis (the "DeSantis plaintiffs") against Dr. John S. Simon ("Simon"). The DeSantis plaintiffs allege that Virginia DeSantis's death resulted from Simon's negligence in recommending and performing two hernia surgeries and his subsequent negligence in failing to diagnose an enterocutaneous fistula.

Simon performed two hernia procedures on Virginia DeSantis in 2005. She had consulted Simon upon the recommendation of her primary care physician, Dr. Shad Grubbs, for an evaluation of a small umbilical hernia. In his treatment notes, Dr. Grubbs indicated that she was suffering minimal pain and was not a good surgical candidate. He recommended to "follow, watch, and wait for now."

Simon recommended a hernia-repair surgery, which he performed in July 2005. Several months later, Virginia DeSantis developed a recurrent hernia. Simon performed

cal Examiners ("BME") on June 27, 2006. The complaint alleged poor quality of care, poor communication and bedside manner, "impairment," unnecessary surgery, and improper patient care following surgery. Along with the complaint, Pam Buckner authorized the release of Virginia DeSantis's medical records and medical information to the BME for its use in its investigation of Dr. Simon.

another surgery in December 2005, after which she developed a fistula in her colon. In January 2006, she was admitted to Presbyterian/St. Luke's Hospital, where doctors diagnosed her with an enterocutaneous fistula and performed an additional surgery. She died in February 2006.

Following Virginia DeSantis's death, family members filed complaints against Simon with the Platte Valley Medical Center and the BME. In June 2006, the Platte Valley Medical Center suspended Simon's clinical privileges at the hospital. In October 2006, Simon entered into a written stipulation with the BME whereby he agreed to permanently inactivate his medical license. He was also the subject of a separate BME investigation in 2004. That investigation addressed his treatment of four patients, none of whom are parties to the current lawsuit. Following the 2004 investigation, the BME issued a stipulated letter of admonishment to Simon requiring him to cooperate with a chart auditor.[3]

The DeSantis plaintiffs filed their wrongful-death complaint against Simon in August 2007, alleging lack of informed consent and negligence. In February 2008, in connection with a deposition, the DeSantis plaintiffs subpoenaed Simon to produce "any and all information and documentation relating to disciplinary proceedings brought against [him] by the BME." Thus, the subpoena targeted all BME investigatory file documents in the doctor's possession.

Simon filed a confidential privilege log that identified various documents, and the date, author, recipient, general description, and asserted privilege for each. He sought a protective order based on section 12–36–118(10) of the Medical Practice Act and section 12–36.5–104(10) of the Peer Review Act for each of forty-four documents exchanged between him and the BME and between him and the BME's chart auditor.

In response, the DeSantis plaintiffs took the position that the Medical Practice Act provides no protection against disclosure of the BME's investigatory files during the discovery phase of litigation. The trial court agreed and entered an order enforcing the production subpoena. It ruled that section 12–36–118(10) provides an exemption from public disclosure only for a Colorado Open Records Act inspection request:

> [This statutory provision] *simply excludes investigations*, examinations, hearings, meetings, and other proceedings *from the Colorado Public Records Law* .... The [BME] is therefore not required to conduct meetings publicly, and minutes and *records are not subject to public inspection. This exemption does not, however, create any privilege or confidentiality in those records or actions by the [BME].* If the General Assembly wished to do so, they could have said so in plain, unambiguous words, as they did for Professional Review Committees in C.R.S. 12–36.5–104(10), which they did not.

(Emphasis added). The trial court found the peer review provision in section 12–36.5–104(10) inapplicable because the BME is not a peer review committee.

Simon then petitioned for review of the trial court's production of documents order under C.A.R. 21, and we issued our rule to show cause.

## II.

We agree that section 12–36.5–104(10) of the Peer Review Act does not apply to this case because the BME is not a peer review committee. We also agree that section 12–36–118(10) of the Medical Practice Act does not directly govern civil discovery requests for the doctor's records. However, when considering whether documents the doctor provided to the BME or received from the BME are discoverable, the trial court may consider any expectation of confidentiality the doctor asserts for records listed in the privilege log. We hold that the trial court abused its discretion in this case by ordering the doctor to produce all of the documents listed in his privilege log, without first re-

---

**3.** A stipulation of final agency order was issued by the BME on July 15, 2004, and contained stipulations by Simon of his failure to meet the general standards of medical practice in his treatment of the four patients, among other stipulations.

viewing them in camera and conducting a *Martinelli* analysis.

### A. Standard of Review

█ The proper construction of section 12–36.5–104(10) of the Peer Review Act and section 12–36–118(10) of the Medical Practice Act is a matter of law we review de novo. *See Freedom Colo. Info., Inc. v. El Paso County Sheriff's Dep't,* 196 P.3d 892, 898 (Colo.2008); *Colo. Dep't of Revenue v. Garner,* 66 P.3d 106, 109 (Colo.2003).

█ We construe statutes in a way that accords plain meaning to their words, harmonizes potentially conflicting statutory provisions, and effectuates the General Assembly's intent. *Lobato v. Indus. Claim Appeals Office,* 105 P.3d 220, 223–24 (Colo.2005). In conducting our analysis, "we may look to a state agency's interpretation of its own enabling statute, according deference when appropriate." *Colo. Min. Ass'n v. Bd. Of County Comm'rs of Summit County,* 199 P.3d 718, 726 (Colo.2009).

### B. Construction of Section 12–36.5–104(10)

█ Contrary to Simon's argument, we agree with the trial court and the BME, that section 12–36.5–104(10) is inapplicable to this case because the BME is not a peer review committee. This section provides:

> [T]he records of a professional review committee, a governing board, or the committee on anticompetitive conduct shall not be subject to subpoena or discovery and shall not be admissible in any civil suit brought against a physician who is the subject of such records.

We have previously recognized that this section creates a qualified privilege for records of hospital review committees. *Posey v. Dist. Court,* 196 Colo. 396, 398–99, 586 P.2d 36, 37–38 (Colo.1978).[4]

Legislatures typically provide peer review committees with qualified immunity and accord confidentiality to committee proceedings to ensure committee members are able to openly, honestly, and objectively study and review the conduct of their peers. *See id.* at 399, 586 P.2d at 38. Under section 12–36.5–103(1), C.R.S. (2008), the BME may "utilize and allow professional review committees and governing boards to assist it in meeting its responsibilities under article 36 [the Medical Practice Act]." Section 12–36.5–102(3), C.R.S. (2008), defines "professional review committee" as "any committee authorized under the provisions of this article to review and evaluate the professional conduct of and the quality and appropriateness of patient care provided by any physician licensed under article 36 . . . ."

These provisions establish that the BME is not a peer review committee; instead, they authorize the BME to utilize peer review committees to "assist it in meeting its responsibilities under article 36." § 12–36.5–103(1). The Medical Practice Act provides that peer review committees are an extension of the BME's authority. *Id.* Thus, Simon is wrong when he contends the peer review committee privilege applies to this case.

### C. Construction of Section 12–36–118(10)

█ C.R.C.P. 26(b)(1) generally requires parties to disclose documents and other information in their possession that may lead to the discovery of relevant and admissible evidence. Nevertheless, discovery of particular documents and information may be limited or prohibited in litigation based on a statutory or common law privilege or other basis for non-disclosure. "Generally, privileges are creatures of statute and therefore must be strictly construed." *People v. Turner,* 109 P.3d 639, 644 (Colo.2005). Because a privilege or other basis for nondisclosure can operate to withhold relevant information from a litigant, we exercise caution in determining whether the claimed protection exists. *See Cantrell v. Cameron,* 195 P.3d 659, 660 (Colo.2008); *see also Churchey v. Adolph Coors Co.,* 759 P.2d 1336, 1346 (Colo.1988); *see also Jenkins v. Dist. Court,* 676 P.2d 1201, 1205 (Colo.1984). Parties claiming the privilege or other non-disclosure protection have the burden of establishing its applicabil-

---

4. The court in *Posey v. Dist. Court,* 196 Colo. 396, 398–99, 586 P.2d 36, 37–38 (Colo.1978), construed section 12–43.5–102(3), C.R.S. (1976), the predecessor statute to 12–36.5–104(10).

ity. *See People v. State,* 797 P.2d 1259, 1262 (Colo.1990).

■■■ The issue of statutory construction we address in this case arises in the context of civil discovery. We discussed the role of discovery privilege logs in *Alcon v. Spicer,* 113 P.3d 735, 742 (Colo.2005). A privilege log identifies the document and explains why it should not be disclosed. One of the purposes for requiring the party resisting discovery to file a privilege log is to reduce the need for in camera inspections of documents. If, after reviewing the privilege log, the party seeking discovery still contends the privilege or other basis for non-disclosure does not apply, and the parties cannot resolve the dispute informally, the party resisting discovery may request in camera inspection of the documents listed on the privilege log. *Id.* During the in camera inspection, the trial court conducts a *Martinelli* inquiry by applying the appropriate balancing test, and makes its decision requiring or restricting disclosure. *See Cantrell,* 195 P.3d at 660; *Stone v. State Farm Mut. Auto Ins. Co.,* 185 P.3d 150, 159–60 (Colo.2008); *Martinelli,* 199 Colo. at 174, 612 P.2d at 1091.

Here, no in camera inspection or *Martinelli* analysis occurred because the parties focused on the construction of section 12–36–118(10) of the Medical Practice Act and our discovery rules. The DeSantis plaintiffs contend that this section applies only to public inspection requests made to the BME and therefore they are entitled, under our discovery rules, to all documents in Simon's possession connected with the BME's investigation of him. In response, Simon contends that section 12–36–118(10) creates a blanket privilege for the BME's investigatory files and he is entitled to invoke that privilege.

The BME takes a more nuanced position in its amicus brief regarding the confidentiality of records it exchanged with Simon in the course of its investigations of him. First, the BME contends that section 12–36–118(10) addresses civil discovery requests as well as public inspection requests. Second, it makes a number of policy arguments about why the documents it exchanged with the doctor should be accorded confidentiality in response to a civil discovery request.[5]

■■■ We turn first to Simon's contentions that section 12–36–118(10) creates a privilege against discovery of the BME's investigatory files, and that this privilege applies to records in his possession connected with the BME investigation. We reject these contentions. Section 12–36–118(10) provides:

> *Investigations,* examinations, hearings, meetings, or any other proceedings of the board *conducted pursuant to the provisions of this section shall be exempt from the provisions of any law requiring* that the proceedings of the board be conducted publicly or *that* the minutes or *records of the board* with respect to action of the board taken pursuant to the provisions of this section *be open to public inspection.*

(Emphasis added).

In making his privilege argument, Simon maintains that the phrase "the provisions of any law" governs discovery in civil lawsuits, as well as public inspection requests for records. However, the plain language of section 12–36–118(10) addresses only "public inspection" of BME records. In contrast to section 12–36.5–104(10) of the Peer Review Act which states that documents, "shall not be subject to subpoena or discovery and shall not be admissible in any civil suit brought against a physician who is the subject of such records," the General Assembly does not ad-

---

**5.** The BME also argues that a provision of the Medical Records Act, as well as the BME's implementing policies, identify which documents connected with the BME disciplinary proceedings shall be made public, thereby demonstrating legislative intent to keep the remainder of the BME investigatory files confidential. *See* § 12–36–111.5, C.R.S. (2008); Colorado State Board of Medical Examiners, Policy 10–18, *Public Disciplinary and Other Board Action Documents.* We agree that the trial court, in conducting its

*Martinelli* analysis, may consider the policies underlying this statutory provision and the BME's implementing policies when deciding which documents should be disclosed to a plaintiff in a civil action and which should be kept confidential. But, we do not agree that section 12–36–111.5 operating in connection with section 12–36–118(10) creates a privilege preventing discovery of all documents connected with the BME's investigatory file.

dress civil discovery at all in section 12–36–118(10) of the Medical Practice Act, much less provide that documents connected with a BME investigation are shielded from discovery.

Here, the DeSantis plaintiffs are not making a public inspection request to the BME. Rather, they are seeking production under our discovery rules for records in Simon's possession. In the absence of a specific statutory provision to the contrary, the General Assembly generally does not intend to supplant discovery practice in civil cases; courts typically retain the authority to consider and weigh whether disclosure would be contrary to the public interest. *Martinelli*, 199 Colo. at 177, 612 P.2d at 1093.

We conclude, from its plain language, that the General Assembly did not intend section 12–36–118(10) to foreclose operation of our discovery rules in a civil lawsuit. However, this does not mean that a civil litigant is entitled to all documents in the doctor's possession connected with a BME investigation. Our discovery rules and case law provide a process for considering a doctor's expectation of confidentiality in records maintained in the course of practice or connected with a BME investigation of professional conduct. In camera inspection and *Martinelli* analysis address such assertions of confidentiality in civil litigation.

Although we disagree with the BME's argument that section 12–36–118(10) governs civil discovery requests, we find that policy reasons the BME advances support that there are confidentiality considerations for documents exchanged between the BME and Simon. We agree that these policy reasons are among those a trial court should consider when conducting its in camera inspection and *Martinelli* analysis.

The General Assembly intended the Medical Practice Act to protect the public from the "unauthorized, unqualified, and improper practice of healing arts ...." § 12–36–102. Accordingly, the BME has authority to regulate physicians, including their licensure and discipline. § 12–36–103. Section 12–36–118 provides for the discipline of physicians who are alleged to have committed "unprofessional conduct." *See* § 12–36–117, C.R.S. (2008) (outlining acts constituting "unprofessional conduct"). Section 12–36–118(3)(b), provides immunity from liability for "[a]ny member of the board, member of the board's staff, any person acting as a witness or consultant to the board, ... [or] any person who lodges a complaint...." Pursuant to section 12–36–118(3)(a), licensees have a duty to report to the BME any other licensee known to have violated section 12–36–117.

Failure by the physician to respond to the complaint in a timely, honest, and materially responsive way is itself defined as "unprofessional conduct." § 12–36–117(gg). The BME relies heavily on self-assessments submitted by the physician under investigation to quickly fashion an appropriate remedy for unprofessional conduct harmful to the public. Physicians would be less likely to cooperate in investigations and disciplinary proceedings, and their responses would be less candid and detailed, if the communications between them and the BME were freely discoverable in civil litigation. In particular, discoverability of physician self-assessments would stifle the frank self-analysis that medical licensing boards typically employ to obtain prompt curative conduct by physicians. *The Privilege of Self-Critical Analysis*, 96 Harv. L.Rev. 1083, 1087–88 (1987). Free flow of information between medical boards and physicians protects the public from the unauthorized, unqualified, or improper practice of medicine. *See id.* at 1087.

Medical boards have an obvious interest in maintaining the confidentiality of their proceedings relating to the investigation of the quality of care rendered to patients at hospitals. *McClain v. Coll. Hosp.*, 99 N.J. 346, 492 A.2d 991, 998–99 (1985); *see also Lipschultz v. Superior Court*, 128 Ariz. 16, 623 P.2d 805, 809 (1981); J.J. Director, *Pretrial Discovery in Disciplinary Proceedings Against Physician*, 28 A.L.R.3d 1440 (1969) (proponent of discovery must show particular need to discover documents collected by board investigators). Additionally, the types of records associated with medical board disciplinary investigations (e.g., medical records, internal agency communications, and self-assessments) are precisely the type of records traditionally afforded non-disclosure protec-

tions. Such communications originate with the expectation they will not be disclosed to third parties.

In addition, the community as a whole has an interest in maintaining the physician-patient relationship, and facilitating candor between licensed medical providers and medical practice boards. *See* 8 J. Wigmore, *Evidence in Trials at Common Law* § 2285 (McNaughton rev.1961); *see also Combined Commc'n Corp. v. Pub. Serv. Co. of Colo.*, 865 P.2d 893, 898–99 (Colo.App.1993) (discussing self-critical analysis privilege).

The trial court must consider interests of the community in maintaining the confidentiality of the subpoenaed materials together with the interests of the DeSantis plaintiffs in the disclosure of materials that are relevant to the litigation, or may lead to relevant information. Thus, the trial court must engage in an ad hoc balancing of the competing interests through an in camera examination of the materials. *Martinelli*, 199 Colo. at 170, 612 P.2d at 1088. Further, the trial court must consider whether redaction or a protective order would better serve the competing interests. *Id.* at 170–71, 176 n. 4, 612 P.2d at 1089, 1093 n. 4.

Here, the DeSantis plaintiffs subpoenaed "any and all information and documentation relating to disciplinary proceedings brought against [Simon] by the BME." Simon's privilege log asserts an expectation of confidentiality for at least three categories of documents connected with the BME's investigations: medical records pertaining to Virginia DeSantis and other non-party patients of Simon, the BME's requests to Simon, and Simon's response to the BME. Neither the DeSantis plaintiffs nor Simon requested in camera inspection of documents listed in Simon's privilege log. In addition, the trial court has not considered which of the several standards set forth in *Martinelli* apply to documents the DeSantis plaintiffs seek to discover. *See Martinelli*, at 169–70, 173–74, 176–74, 612 P.2d at 1088–89, 1091–92, 1093–94.

There is no question in this case that the DeSantis plaintiffs are entitled to the production of Virginia DeSantis's own medical records information. Simon states in his briefs that he has provided this information.

Whether the DeSantis plaintiffs are entitled to subpoena non-party medical records in Simon's possession, notwithstanding Simon's assertion of the physician-patient privilege in regard to such records, has not been addressed by the trial court, let alone squarely resolved. The open communication and self-assessment policy basis for non-disclosure may justify protecting the documents exchanged between Simon and the BME from discovery. *See Lipschultz*, 623 P.2d at 809 (holding that doctors sued for medical malpractice may assert confidentiality for information compiled by a medical board during its investigations).

On remand, if parties continue to contest the discovery of documents listed in Simon's privilege log, the trial court should undertake an in camera inspection of the documents, engage in a *Martinelli* analysis, and make its decision regarding the disclosure, non-disclosure, redaction and protective orders. In the absence of a *Martinelli* analysis, the trial court's order compelling Simon to disclose all documents connected with the BME's investigations of him cannot stand.

### III.

Accordingly, we make our rule absolute and reverse the trial court's order. We return this case to the trial court for further proceedings consistent with this opinion.