

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | NO. 70955-1-I |
| | ) | |
| Respondent, | ) | DIVISION ONE |
| | ) | |
| v. | ) | |
| | ) | |
| JOHN PATRICK BLACKMON, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | FILED: December 22, 2014 |
| | ) | |

LAU, J. — After two mistrials, the jury convicted John Blackmon on two counts of second degree child molestation, one count of third degree rape of a child, and two counts of third degree child molestation involving his daughter, IB. He claims error based on ER 106 rulings, improper opinion testimony, prosecutorial misconduct, denial of his mistrial motion, confrontation right violation, and the court's imposition of an exceptional sentence. Blackmon also submitted a pro se statement of additional grounds alleging 10 additional errors. Finding no reversible error, we affirm. However, we accept the State's concession on the excessive sentence issue and remand to the trial court for resentencing.

## FACTS

Although the facts were disputed at trial, the evidence shows the following. In 2007, John Patrick Blackmon lived in a three-bedroom home with his wife, Jenifer Blackmon,[1] and their three children, IB, ZB, and BB.

Blackmon's oldest daughter, IB, reported that sometime before August 2008, he began sexually abusing her when she was 13 years old. Blackmon put his hand down IB's shorts and began rubbing her after the family had gone to bed.

IB testified that sometimes the abuse would occur three to four times per week. She said he performed oral sex on her, placed his penis between her butt cheeks, exposed her to pornography, had her stimulate him, and asked to shave her pubic hair. IB testified that this abuse happened in Blackmon's bedroom while the two watched movies. He locked the door to prevent the other children from coming into the room. Blackmon covered the gap between the door frame and wall with a pillow or a towel to prevent anyone from peering into the room. IB testified the abuse happened when her mother was at work or asleep. On occasion, IB initiated the sexual contact because it made her feel closer to Blackmon.

The abuse stopped at the start of IB's sophomore year of high school. She told Blackmon she wanted a normal relationship with him without the sexual activity. He agreed, but their relationship became contentious. For example, Blackmon revoked her privileges and threatened to stop her from playing basketball when she violated a rule

---

[1] We use Jenifer's first name for clarity.

against texting friends on the "no contact" list. Report of Proceedings (RP) (July 5, 2013) at 516-17. IB described their relationship as "[v]ery rocky" and "argumentative." RP (July 5, 2013) at 392.

Soon afterwards, IB disclosed the abuse to her friend, MF. MF reported the abuse to her mother, who then reported it to her husband, Mark Froland, an Edmonds police officer. Officer Froland talked to IB and reported the abuse allegation to Marysville Police Detective Cori Shackleton.

Blackmon was arrested and charged with various counts of molestation and child rape involving IB. Two trials resulted in mistrials when the juries deadlocked. The State refiled charges against Blackmon by fifth amended information with two counts of second degree child molestation, one count of third degree rape of a child, and two counts of third degree child molestation. The jury convicted Blackmon as charged.

At sentencing, the trial court imposed 116 months on each count of second degree child molestation (counts 1 and 2), 60 months on one count of third degree rape of a child (count 3), and 60 months on each count of third degree child molestation (counts 4 and 5). Counts 1 through 4 ran concurrent to each other and consecutive on count 5, resulting in a total sentence of 176 months. The court also ordered 36 months of community custody for each of the five counts. It indicated, "The combined term of community custody and confinement shall not exceed the statutory maximum." Blackmon appeals.

70955-1-I/4

## ANALYSIS

### Rule of Completeness—Evidence Rule 106

At trial, the State read to the jury select portions from the 79-page transcript of Blackmon's prior trial testimony.[2] Blackmon argues the trial court erred by denying his request to admit remaining portions of his prior trial testimony. He claims this error violates ER 106 and the state and federal constitutions.[3] Under ER 106, the court admitted eight of Blackmon's proposed transcript excerpts and excluded five.

ER 106 allows a party to supplement portions of a writing or recorded statement offered by an adverse party with other relevant portions as fairness requires: "When a writing or recorded statement or part thereof is introduced by a party, an adverse party may require the party at that time to introduce any other part, or any other writing or recorded statement, which ought in fairness to be considered contemporaneously with it."

The rule's purpose is "to protect against the misleading impression that might otherwise result from hearing or reading materials out of context." 5D KARL B. TEGLAND, WASHINGTON PRACTICE: COURTROOM HANDBOOK ON EVIDENCE § 106:1 (2013-2014). "The rule is not, however, a vehicle for the wholesale introduction of otherwise inadmissible evidence to rebut the writing or recording or to benefit the opponent in some other way. Material in the writing or recording that is irrelevant or privileged remains inadmissible." 5D TEGLAND, supra, § 106:2. Once relevance has been

---

[2] Blackmon did not testify at his second or third trial.

[3] Blackmon does not contest that his prior sworn trial testimony was generally admissible in his subsequent trial.

-4-

established, the court determines whether the offered portions of the statement are necessary to (1) explain the admitted evidence, (2) place the admitted portions in context, (3) avoid misleading the trier of fact, and (4) ensure a fair and impartial understanding of the evidence. State v. Larry, 108 Wn. App. 894, 910, 34 P.3d 241 (2001) (citing United States v. Velasco, 953 F.2d 1467, 1475 (7th Cir. 1992)). The completeness doctrine does not require introduction of portions of a statement that are neither explanatory of nor relevant to the admitted passages. United States v. Marin, 669 F.2d 73, 84 (2d Cir. 1982). The trial court's decision regarding admission of evidence is reviewed for abuse of discretion. State v. Simms, 151 Wn. App. 677, 692, 214 P.3d 919 (2009), aff'd 171 Wn.2d 244, 250 P.3d 107 (2011).

Blackmon argues that five excerpts were erroneously excluded. He claims the trial court erred by excluding his exculpatory testimony from the first trial where he denied committing the offenses. At trial, he argued that it is unfair to let the jury know he previously testified and leave them with the mistaken impression that he may have confessed to the offenses. He also argues the omission violates his rights under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution and article I, sections 3, 9, and 22 of the Washington State Constitution. In the context of the rule of completeness, the State offered no prior testimony related to any confession or admission of guilt by Blackmon. Blackmon established no factual or legal basis to admit his exculpatory testimony denying the commission of the offenses under this limited rule. His defense trial strategy consistently challenged IB's credibility. Thus, he

identifies no prior trial testimony that "in fairness" requires the admission of his

exculpatory statement. ER 106. His assertion relies on speculation not evidence.[4]

Our review of the record indicates the trial court properly exercised its discretion

in excluding the remaining excerpts offered by Blackmon. These statements relate to

(1) Blackmon's disapproval of anal sex as sodomy, (2) his education and military

experience, (3) how he first met his wife, and (4) his offer to leave the house for a day

during a police investigation. The court excluded these excerpts on various grounds,

including irrelevant, duplicative, unnecessary for context and completeness, and not

unfair. For example, Jenifer testified about how she met Blackmon and about his

employment history. Officer Allen testified that Blackmon agreed to leave for the night

during their investigation. Further, the court allowed Blackmon to present, in part, his

personal views about anal sex with his wife. It properly excluded the excerpt in which

Blackmon expressed his religious feelings about anal sex.

---

[4] Blackmon relies on United States v. Walker, 652 F.2d 708, 710 (7th Cir. 1981), United States v. Marin, 669 F.2d 73 (2d Cir. 1982), and United States v. Glover, 101 F.3d 1183 (7th Cir. 1996). Those cases are inapposite. He also misstates the rule in Walker v. Bangs, 92 Wn.2d 854, 601 P.2d 1279 (1979). He asserts that case stands for the proposition that "'fairness' ordinarily requires that the adverse party be permitted to introduce the entire remainder of the writing." Appellant's Br. at 26. The case merely recognizes the well-settled rule that a trial court has discretion to exclude otherwise admissible evidence if its prejudice outweighs its probative value. Bangs 92 Wn.2d at 862.

Blackmon fails to point out that in the prior trial, during the State's cross-examination, he testified, "Actually I know of my innocence and I've moved forward." The court allowed the State to present this exculpatory testimony in Blackmon's third trial. RP (July 9, 2013) at 904.

Given our dispositive resolution of the ER 106 issue, we need not address Blackmon's constitutional argument.[5] In any event, a criminal defendant has no constitutional right to have irrelevant evidence admitted in his or her defense. See State v. Hudlow, 99 Wn.2d 1, 15, 659 P.2d 514 (1983); State v. Rehak, 67 Wn. App. 157, 162, 834 P.2d 651 (1992). Further, evidentiary errors are generally not of a constitutional magnitude. State v. Grier, 168 Wn. App. 635, 643 n.16, 278 P.3d 225 (2012) (citing State v. Chase, 59 Wn. App. 501, 508, 799 P.2d 272 (1990)). Blackmon's ER 106 claims fail.

Opinion Testimony

Blackmon contends that two statements by officers at trial improperly commented on his guilt and violated his right to a jury trial.

Marysville Police Officer David Allen testified about what he observed when he first encountered IB. He testified, "I remember a very scared teenage girl who was sitting on the couch. She was all curled up into a ball and kind of something that we commonly associated with [a] defensive posture." RP (July 8, 2013) at 737.

Detective Cori Shackleton testified about how she became involved in the investigation. "I received a call from Mark Froland, who is an Edmonds officer, and he said that his daughter's friend had told his daughter that she had been molested by her father." RP (July 9, 2013) at 839.

---

[5] Blackmon asserts that the trial court based its ER 106 rulings "on the fact that Mr. Blackmon could have taken the stand to testify if he chose . . . ." Appellant's Br. at 24. The record plainly shows that the trial court rulings are based entirely on the proper application of the legal principles discussed above.

No witness, lay or expert, may testify to the guilt of a defendant, whether by direct statement or inference. State v. Sanders, 66 Wn. App. 380, 387, 832 P.2d 1326 (1992). Such an opinion violates the defendant's right to a trial by an impartial jury and the right to have the jury make an independent evaluation of the facts. Sanders, 66 Wn. App. at 387.

Blackmon did not object to either statement at trial. The general rule is that appellate courts will not consider issues raised for the first time on appeal. RAP 2.5(a); State v. Tolias, 135 Wn.2d 133, 140, 954 P.2d 907 (1998); State v. McFarland, 127 Wn.2d 322, 332-33, 899 P.2d 1251 (1995). However, a claim of error may be raised for the first time on appeal if it is a manifest error affecting a constitutional right. RAP 2.5(a)(3); State v. Walsh, 143 Wn.2d 1, 7, 17 P.3d 591 (2001); Tolias, 135 Wn.2d at 140.

To raise an error for the first time on appeal, the error must be "manifest" and truly of constitutional dimension. State v. WWJ Corp., 138 Wn.2d 595, 602, 980 P.2d 1257 (1999); State v. Scott, 110 Wn.2d 682, 688, 757 P.2d 492 (1988). The defendant must identify a constitutional error and show how the alleged error actually affected the defendant's rights at trial. It is this showing of actual prejudice that makes the error "manifest," allowing appellate review. McFarland, 127 Wn.2d at 333; Scott, 110 Wn.2d at 668. If a court determines the claim raises a manifest constitutional error, it may still be subject to harmless error analysis. McFarland, 127 Wn.2d at 333; State v. Lynn, 67 Wn. App. 339, 345, 835 P.2d 251 (1992).

Impermissible opinion testimony regarding the defendant's guilt may be reversible error if such evidence violates the defendant's constitutional right to a jury

trial, which includes the independent determination of the facts by the jury. State v. Demery, 144 Wn.2d 753, 759, 30 P.3d 1278 (2001); State v. Black, 109 Wn.2d 336, 348, 745 P.2d 12 (1987).

But the exception under RAP 2.5(a)(3) for manifest constitutional error is a "narrow one." State v. Kirkman, 159 Wn.2d 918, 934, 155 P.3d 125 (2007). In determining whether a claimed error is manifest, we view the claimed error in the context of the record as a whole, rather than in isolation. Manifest error is "'unmistakable, evident or indisputable.'" State v. Burke, 163 Wn.2d 204, 224, 181 P.3d 1 (2008) (quoting State v. Lynn, 67 Wn. App. 339, 345, 835 P.2d 251 (1992)).

On the specific issue of whether the admission of opinion testimony on an ultimate fact, without objection, is reviewable as "manifest" constitutional error, the Washington Supreme Court held:

> 'Manifest error' requires a nearly explicit statement by the witness that the witness believed the accusing victim. Requiring an explicit or almost explicit witness statement on an ultimate issue of fact is consistent with our precedent holding the manifest error exception is narrow. . . . [It] is [also] improper for any witness to express a personal opinion on the defendant's guilt.

Kirkman, 159 Wn.2d at 936-37.

Officer Allen's testimony was not an explicit or near-explicit opinion or comment on Blackmon's guilt or veracity. "[T]estimony that is not a direct comment on the defendant's guilt or on the veracity of a witness, is otherwise helpful to the jury, and is based on inferences from the evidence is not improper opinion testimony." City of Seattle v. Heatley, 70 Wn. App. 573, 578, 854 P.2d 658 (1993). Officer Allen's disputed testimony was based on his direct observation and knowledge of the facts he personally observed.

-9-

Detective Shackleton responded to the State's question about how she became involved in the investigation. It is obvious from the question and her answer that the testimony was not offered for the truth of the matter asserted.[6] State v. Iverson, 126 Wn. App. 329, 337, 108 P.3d 799 (2005) ("When a statement is not offered for the truth of the matter asserted but is offered to show why an officer conducted an investigation, it is not hearsay and is admissible.").

Thus, if Blackmon had objected on hearsay grounds at trial, the court would have overruled the objection because the testimony was not hearsay given its context. Detective Shackleton's testimony does not constitute an explicit or near-explicit opinion or comment on Blackmon's guilt. The claimed error was not manifest.

Motion in Limine

Blackmon claims that when IB violated the trial court's order in limine by mentioning the word "trial," it allowed the jury to speculate that he had been previously tried and convicted after testifying.

Before trial, the court granted a motion in limine precluding references to Blackmon's "prior trials." RP (July 1, 2013) at 27. Throughout the trial, nearly all witnesses were questioned at length about their testimony at "prior proceedings" or "prior hearings" in the case.[7]

---

[6] Blackmon's reply brief argues, for the first time on appeal, that the testimony was inadmissible hearsay. We disagree.

[7] The State provides nearly 30 citations to the record where witnesses were questioned about prior "proceedings" or "hearings."

On cross-examination, Blackmon sought to impeach IB with her written statement. "So this was a statement that you wrote between the second time you testified and this time, the third time that you've testified; right?"[8] RP (July 8, 2013) at 544. On redirect, the State asked IB about the statement:

> Q: . . . When you said you testified against your father for two weeks, did you mean you sat in the chair you're in now, or a chair like it, and talked in front of people for two weeks straight?
> A: No.
> Q: What did you mean?
> A: I was meaning that I was in trial or, like, in a hearing like this for two weeks.

RP (July 8, 2013) at 582-83 (emphasis added).

The court denied Blackmon's subsequent mistrial motion. It reasoned that the reference was de minimis and Blackmon repeatedly asked her about prior testimony. The court concluded, "[T]o grant a mistrial over that would be like swatting a fly with a nuclear bomb. It would be wholly inappropriate to grant a mistrial under those circumstances." RP (July 8, 2013) at 593.

A violation of an order in limine is considered a serious trial irregularity, but not all such violations are considered so serious as to deprive the defendant of a fair trial. State v. Thompson, 90 Wn. App. 41, 46-47, 950 P.2d 977 (1998). To determine whether an irregularity deprived a defendant of a fair trial, this court considers the following factors: (1) the seriousness of the irregularity, (2) whether the statement in question was cumulative, and (3) whether the irregularity could be cured by an instruction to disregard the remark, an instruction that the jury is presumed to follow. State v. Escalona, 49 Wn. App. 251, 254, 742 P.2d 190 (1987). Claims of prejudice are

---

[8] IB was asked by both parties about prior interviews and testimony 16 times.

reviewed against the backdrop of all the evidence. Escalona, 49 Wn. App. at 254. Because the trial judge is in the best position to determine the impact of a potentially prejudicial remark, a trial court's decision is reviewed for an abuse of discretion. Escalona, 49 Wn. App. at 254-55. A trial court's denial of a motion for mistrial will be overturned only when there is a substantial likelihood the error prompting the mistrial affected the jury's verdict. State v. Rodriguez, 146 Wn.2d 260, 269-70, 45 P.3d 541 (2002).

Here, the violation was de minimis. Considered in the context of numerous references to prior "hearings" and "proceedings," the jury was well aware that proceedings occurred before it was empaneled. IB's isolated reference to a trial disclosed nothing about the substance or result of any prior proceedings. Moreover, the alleged error could have been easily cured by a cautionary instruction. Blackmon requested none. We conclude the trial court properly denied Blackmon's mistrial motion.

Prosecutorial Misconduct

Blackmon alleges the prosecutor committed misconduct when he (1) elicited testimony from MF that it was hard to testify with the defendant in the room, (2) referred to a document as a "trial transcript" shortly after Blackmon moved for a mistrial based on IB's trial comment, and (3) misstated the burden of proof during rebuttal closing.

Blackmon did not object to any of these alleged errors at trial. As a general rule, appellate courts will not consider arguments raised for the first time on appeal unless it is a manifest constitutional error. RAP 2.5(a)(3); State v. McFarland, 127 Wn.2d 322, 333, 899 P.2d 1251 (1995). An appellant must show actual prejudice in order to

establish that the error is manifest. State v. Contreras, 92 Wn. App. 307, 311, 966 P.2d 915 (1998). It is not enough to allege prejudice; actual prejudice must appear in the record. McFarland, 127 Wn.2d at 334. To show he was prejudiced by the statements, defendant must show that the trial court would likely have sustained the objection if made. McFarland, 127 Wn.2d at 334. A defendant claiming prosecutorial misconduct "'bears the burden of establishing the impropriety of the prosecuting attorney's comments and their prejudicial effect.'" State v. McKenzie, 157 Wn.2d 44, 52, 134 P.3d 221 (2006) (quoting State v. Brown, 132 Wn.2d 529, 561, 940 P.2d 546 (1997)). Where the defense fails to object to an improper comment, the error is considered waived "'unless the comment is so flagrant and ill-intentioned that it causes an enduring and resulting prejudice that could not have been neutralized by a curative instruction to the jury.'" McKenzie, 157 Wn.2d at 52, (quoting Brown, 132 Wn.2d at 561).

When a prosecutor fails to act in the interest of justice, a prosecutor commits misconduct. State v. Davenport, 100 Wn.2d 757, 762, 675 P.2d 1213 (1984). Where there is a substantial likelihood a prosecutor's misconduct affected the jury's verdict, the defendant is deprived of the fair trial he or she is guaranteed by the Fourteenth Amendment. State v. Belgarde, 110 Wn.2d 504, 508, 755 P.2d 174 (1988).

Right to Confront

Blackmon contends that when the State asked MF why she was emotional and having a difficult time testifying in Blackmon's presence, it improperly asked the jury to convict him because he exercised his right to confront a witness.

At trial, MF testified about a conversation with IB. The prosecutor asked her why she was upset and she replied that "It's really hard to talk about what happened and to see him." RP (July 2, 2013) at 16.

On cross-examination, Blackmon also asked MF about being upset.

Q: It's pretty hard for you to be here today, huh?
A: Yes.
Q: And that's because John Blackmon is here?
A: Right.
Q: You understand that he has to be here?
A: Yes.

RP (July 2, 2013) at 24.

Article I, section 22 of the Washington State Constitution guarantees a defendant's right to a fair trial. The State may not ask the jury to draw adverse inferences merely because a defendant exercised his right under article I, section 22 to confront a witness face-to-face. State v. Wallin, 166 Wn. App. 364, 373-74, 209 P.3d 1072 (2012). A comment is improper where it "naturally and necessarily" causes the jury to focus on the defendant's exercise of a constitutional right. State v. Ramirez, 49 Wn. App. 332, 336, 742 P.2d 726 (1987). Comments "naturally and necessarily" focus on the exercise of a constitutional right when they explicitly or implicitly direct the jury's attention to the defendant's actions that are a result of the exercise of that right. Ramirez, 49 Wn. App. at 336. But so long as the focusing of the questioning or argument is not upon the exercise of the constitutional right itself, the inquiry or argument does not infringe upon a constitutional right. State v. Gregory, 158 Wn.2d 759, 807, 147 P.3d 1201 (2006).

The confrontation clause includes the right to have a witness physically present, to have that testimony offered under oath and subject to cross-examination, and to provide the trier of fact with an opportunity to observe the demeanor of the witness. State v. Foster, 135 Wn.2d 441, 456, 957 P.2d 712 (1998) (citing Maryland v. Craig, 497 U.S. 836, 845-46, 110 S. Ct. 3157, 3163, 111 L. Ed. 2d 666 (1990)).

Gregory is instructive. There, the prosecutor asked a witness how she felt about testifying in court and being cross examined. The witness elaborated about this difficulty and the prosecutor used it in closing argument. The court characterized the relevant issue as

> 'whether the prosecutor manifestly intended the remarks to be a comment on that right.' State v. Crane, 116 Wn.2d 315, 331, 804 P.2d 10 (1991). These cases suggest that so long as the focus of the questioning or argument 'is not upon the exercise of the constitutional right itself,' the inquiry or argument does not infringe on the constitutional right. [State v.] Miller, 110 Wn. App. [283,] 284, [40 P.3d 692 (2002)].

Gregory, 158 Wn.2d at 807. The court found no constitutional violation because the questioning and argument did not focus on Gregory's right to a trial or to confront witnesses. Gregory, 158 Wn.2d at 807. Here, the questioning and argument were proper because the prosecutor did not focus on Blackmon's right to confront witnesses.

Prosecutor's Reference to "Trial" Transcript

Blackmon contends the prosecutor committed misconduct by referring to a "trial" transcript shortly after IB mentioned "trial."

In the context of the entire record, Blackmon fails to show that the State's isolated reference to a "trial" transcript incurably prejudiced the jury. The record shows the prosecutor immediately corrected the reference, ("excuse me—a transcript of a

-15-

hearing." RP (July 5, 2013) at 496-97), and Blackmon failed to object. Blackmon fails to establish any prejudice resulting from the prosecutor's isolated reference to "trial." Even assuming misconduct, the error does not constitute incurable flagrant misconduct. This claim fails.

### Rebuttal Closing Statement

Blackmon claims that in rebuttal closing, the State misstated the burden of proof when it argued that to acquit, the jury must find the State's witnesses were lying. We disagree.

The prosecutor argued:

> Ladies and gentlemen, it should be abundantly clear to you at this point, if it wasn't days ago, that through the presentation of the evidence in this case, you have been presented with two different options. Two very different options.
> Either this was an elaborate, brilliantly constructed and perfectly executed fabrication designed by [IB] to get rid of her dad, and along the way enlisting the help of her mother and siblings and best friend and police officers, or it really happened.

RP (July 9, 2013) at 1021-22.

Even improper remarks by the prosecutor are not grounds for reversal if they were invited or provoked by defense counsel and are in reply to his or her acts and statements, unless the remarks are not a pertinent reply or are so prejudicial that a curative instruction would be ineffective. State v. Weber, 159 Wn.2d 252, 276-77, 149 P.3d 646 (2006) (citing State v. Russell, 125 Wn.2d 24, 86, 882 P.2d 747 (1994)). When challenging a prosecutor's statement in closing, the defendant bears the burden of establishing the prosecutor's conduct was both improper and prejudicial. State v. Emery, 174 Wn.2d 741, 760-61, 278 P.3d 653 (2012).

The State's remark was a direct, pertinent reply to Blackmon's closing argument that IB had decided to tell a "terrible lie." RP (July 9, 2013) at 990, 1019-20. Even if the comment were improper, any prejudice could have been cured by an instruction.

Blackmon argues that the State misrepresented the burden of proof, citing State v. Barrow, 60 Wn. App. 869, 809 P.2d 209 (1991) and State v. Fleming, 83 Wn. App. 209, 921 P.2d 1076 (1996). But here, unlike in Barrow and Fleming, the prosecutor never mentioned the burden of proof or tied the jury's credibility determination to its ability to convict or acquit. The prosecutor's remarks were a pertinent reply to defense counsel's closing argument attack on IB's credibility, a theme he developed throughout the trial.

Blackmon fails to establish both the impropriety of the statement and any prejudice. Blackmon's claim fails.

Cumulative Error

Blackmon argues that because his case was close, cumulative error denied him a fair trial. But the cumulative error doctrine does not apply where the errors are few and have little or no effect on the outcome of the trial. Weber, 159 Wn.2d at 279. This claim fails.

Exceptional Sentence

Blackmon argues the exceptional sentence imposed by the court violates the Sentencing Reform Act (SRA). Blackmon's convictions on counts 1 through 4 resulted in an offender score of 9. His fifth conviction on count 5 increased his score to 12. The court imposed an exceptional sentence by imposing a consecutive sentence for count 5.

-17-

An offender score is computed based on both prior and current convictions. RCW 9.94A.525(1). For the purposes of calculating an offender score when imposing an exceptional sentence, current offenses are treated as prior convictions. State v. Newlun, 142 Wn. App. 730, 742, 176 P.3d 529 (2008). A defendant's standard range sentence reaches its maximum limit at an offender score of "9 or more." RCW 9.94A.510. Where a defendant has multiple current offenses that result in an offender score greater than 9, further increases in the offender score do not increase the standard sentence range. See State v. Alvarado, 164 Wn.2d 556, 561-63, 192 P.3d 345 (2008). A trial court may impose an exceptional sentence under the free crimes aggravator when "[t]he defendant has committed multiple current offenses and the defendant's high offender score results in some of the current offenses going unpunished." RCW 9.94A.535(2)(c); State v. France, 176 Wn. App. 463, 468-69, 308 P.3d 812 (2013) review denied, 179 Wn.2d 1015 (2014).

The trial court has "'all but unbridled discretion'" in fashioning the structure and length of an exceptional sentence. France, 176 Wn. App. at 470 (quoting State v. Halsey, 140 Wn. App. 313, 325, 165 P.3d 409 (2007)). The trial court's discretion to impose an exceptional sentence on all current offenses is triggered once the defendant has some current offenses going unpunished. France, 174 Wn. App. at 470. Here, the trial court lawfully imposed an exceptional sentence of 176 months because Blackmon had current offenses going unpunished. In other words, a standard range sentence here results in one of Blackmon's current convictions going unpunished. To avoid a free crime, count 5, the court imposed an exceptional consecutive sentence. No

findings of fact are necessary here to support the court's exceptional sentence. Alvarado, 164 Wn.2d at 561.

Blackmon also contends the State's failure to notify him before seeking the exceptional sentence violates due process. Under the SRA, notice to the defendant is not required when the aggravating factor is based on prior criminal history because the statutory scheme itself provides notice. State v. Edvalds, 157 Wn. App. 517, 534, 237 P.3d 368 (2010). Under RCW 9.94A.537(1):

> At any time prior to trial or entry of the guilty plea if substantial rights of the defendant are not prejudiced, the state may give notice that it is seeking a sentence above the standard range. The notice shall state aggravating circumstances upon which the requested sentence will be based.

Here, the State made no request for an exceptional sentence.[9] Blackmon's exceptional sentence claim fails.

## STATEMENT OF ADDITIONAL GROUNDS (SAG)

Blackmon alleges 10 additional assignments of error in his statement of additional grounds.

### Courtroom Closure

Blackmon alleges that the trial court erred by closing the courtroom to public access by sealing the court records. SAG at 2. He provides no citations to where either a courtroom was closed or records were sealed. A review of the record reveals no closures or sealing of court records. This argument is without merit.

---

[9] Blackmon relies on Burrage v. United States, ___ U.S. ___, 134 S. Ct. 881, 187 L. Ed. 2d 715 (2014); Alleyne v. United States, ___ U.S. ___, 133 S. Ct. 2151, 186 L. Ed. 2d 314 (2013); State v. Siers, 174 Wn.2d 269, 274 P.3d 358 (2012); and State v. Schaffer, 120 Wn.2d 616, 845 P.2d 281 (1993). These cases are not applicable.

Tainted Jury Venire

Blackmon contends that the trial court allowed a juror's improper comments to taint the jury venire. SAG at 3. During voir dire, juror 46 informed the trial court's law clerk "out in the hallway" that she overheard comments about the case at a coffee shop. RP (July 2, 2013) at 83. The trial court questioned and excused the juror for potential prejudice. There is no venire taint and no evidence other jurors heard this comment.

Citation Errors

Blackmon points out a citation error in his attorney's brief. We note the correction.

Failure to Excuse Jurors

Blackmon argues the trial court erred by failing to excuse juror 26 who indicated he could not be fair, by failing to excuse a juror who worked as a victim's advocate, that several juror had implied bias, and that the trial court should have excluded jurors who disclosed childhood abuse. A review of the record shows that juror 26 stated he could be fair and impartial. His argument that the victim's advocate was compelled to vote guilty or that several other jurors had implied bias is unsubstantiated. Some jurors acknowledged they disliked the crime but stated they could be fair. This claim fails.

Probable Cause Hearing

Blackmon contends that the trial court erred by not holding a probable cause hearing within 48 hours of his arrest on January 10, 2012. But Blackmon stipulated to probable cause at a hearing on January 12, 2012. This claim fails.

### Improper Testimony

Blackmon argues it was improper for the trial court to permit testimony to be read into the record. One incident involves refreshing a witness's memory. Blackmon failed to object. A party's failure to raise an issue at trial waives the issue on appeal unless the party can show manifest constitutional effort. RAP 2.5(a). Blackmon makes no such showing. Our review of his remaining alleged improprieties shows no trial error occurred.

### Improper Hearsay

Blackmon argues that the trial court improperly admitted hearsay evidence. His first hearsay allegation involved no objection. His remaining allegations involved timely objections by defense counsel. One objection was sustained, and the jury was instructed to disregard the hearsay. The next two allegations involved objections that were overruled. A trial court's evidentiary rulings are reviewed for an abuse of discretion. Simms, 151 Wn. App. at 692. A trial court abuses its discretion when its evidentiary ruling is manifestly unreasonable or is based on untenable grounds or reasons. State ex rel. Carroll v. Junker, 79 Wn.2d 12, 26, 482 P.2d 775 (1971). Blackmon establishes no abuse of discretion by the trial court as to any hearsay evidence.

### Ineffective Assistance of Counsel

Blackmon alleges numerous grounds for ineffective assistance of counsel.[10] To prevail on a claim of ineffective assistance of counsel, a defendant must show that

---

[10] Blackmon claims his attorney (1) should have called an expert witness to describe memory problems in child witnesses, (2) failed to effectively question jurors

counsel's performance fell below an objective standard of reasonableness and that the deficient performance prejudiced his trial. Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); McFarland, 127 Wn.2d at 334-35. The reasonableness inquiry presumes effective representation and requires the defendant to show the absence of legitimate strategic or tactical reasons for the challenged conduct. McFarland, 127 Wn.2d at 336. If one of the two prongs is not satisfied, the inquiry ends. Strickland, 466 U.S. at 697; State v. Foster, 140 Wn. App. 266, 273, 166 P.3d 726 (2007). Blackmon fails to discuss how his counsel's performance fell below an objective standard of reasonableness. This claim fails.

### Juror Dishonesty

Blackmon argues that juror 14 failed to disclose a shooting incident on her juror questionnaire. During voir dire, the prosecutor asked juror 14 about a shooting incident. The juror responded, "I don't know what I was referring to." RP (July 2, 2013) at 102. Later the juror states that she remembered a shooting incident. Blackmon contends that because of this disclosure, his attorney should have stricken the juror for cause. The record does not establish a basis for a for-cause challenge. This claim fails.

### Sentence Exceeds Statutory Maximum

Blackmon alleges his sentence exceeds the statutory maximum under RCW 9A.20.021 because it included an additional 36 months of community custody

---

during voir dire, (3) should have objected to a victim's advocate serving on the jury, (4) did not challenge jurors who had suffered past abuse, (5) should have objected to the reading of transcripts, (6) failed to call an expert to discuss the effect of time on the victim's testimony, (7) should have challenged the trial judge as biased, (8) improperly read from transcripts during trial, (9) improperly coached defense witnesses by reading from prior testimony, and (10) should not have had a federal case load.

when combined with the statutory maximum term of confinement. The court sentenced Blackmon to 116 months on each count of second degree child molestation, 60 months on the count of third degree rape of a child, and 60 months on each count of third degree child molestation. The court imposed concurrent sentences on counts 1 through 4 and consecutive on count 5. The court ordered 36 months of community custody on each of the five counts.

The standard range for each count of second degree child molestation is 87 to 116 months, with a maximum sentence of 10 years' imprisonment. The standard range for third degree rape of a child is 60 months, with a maximum sentence of 5 years' imprisonment. The standard range for each count of third degree child molestation is 60 months, with a maximum of 5 years' imprisonment. The court ordered 36 months of community custody on each of the five counts. Here, the term of community custody, combined with the statutory maximum term of confinement, exceeds the statutory maximum under RCW 9A.20.021.

RCW 9.94A.701(9) provides that the community custody term specified by RCW 9.94A.701 "shall be reduced by the court whenever an offender's standard range term of confinement in combination with the term of community custody exceeds the statutory maximum for the crime." See also State v. Boyd, 174 Wn.2d 470, 473, 275 P.3d 321 (2012). The remedy is to remand to the trial court to either amend the community custody term or resentence. Boyd, 174 Wn.2d at 473. The State properly concedes that remand for resentencing is the appropriate remedy. We accept this concession.

## CONCLUSION

For the reasons discussed above, we affirm Blackmon's convictions. But we accept the State's proper concession under Boyd and remand to the trial court for resentencing.

WE CONCUR: